*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANNY BUTCHER,

Defendant-Appellant.

UNPUBLISHED
September 5, 2019

No. 342894
Wayne Circuit Court
LC No. 17-007763-01-FC

Before: SHAPIRO, P.J., and GLEICHER and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions for second-degree murder, MCL 750.317, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to concurrent sentences of 70 to 120 years' imprisonment for the second-degree murder conviction, and 2 to 10 years' imprisonment for the felon-in-possession conviction, consecutive to two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises out of the killing of George Sims, on August 13, 2017, in Detroit. Sims' fiancée, Keileasha Yurko, testified that she was leaving a block party and walking to her car with Sims and a few other friends when defendant walked up to the group and started yelling at her. According to the testimony, defendant repeatedly yelled that Yurko's sister had stolen drugs out of his vehicle. While defendant and Yurko were arguing, defendant pulled a gun from his waistband and fired a shot in the air. At that point, Sims, in an attempt to defuse the situation, stood between defendant and Yurko and urged defendant to calm down. Within seconds however defendant fired a shot into Sims' eye, killing him instantly.

At trial, defendant argued that he did not fire a gun during the incident and was not guilty of any crime. His attorney argued that even if defendant killed Sims, it was in the heat of the moment and so he was guilty, at most, of voluntary manslaughter. At the conclusion of the prosecution's proofs, defendant moved for a directed verdict on the premeditated murder charge. The trial court denied this motion, concluding that there was sufficient evidence for the jury to

find premeditation. On appeal, defendant argues that his motion for directed verdict was improperly denied and that the submission of the first-degree murder charge to the jury resulted in the jury reaching a compromise verdict of second-degree murder, whereas had the jury not been instructed on first-degree murder it would have returned a verdict of manslaughter.

Because there was sufficient evidence for the jury to receive an instruction on first-murder premeditated murder, we find no error and so affirm his convictions.[1]

"[T]he elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted). Common sense might dictate that premeditation and deliberation requires a period longer than a few seconds during a heated argument. Indeed, in this case defendant was not arguing with Sims and there was no evidence that he had any dispute with Sims until the moment Sims stepped between defendant and Yurko seconds before the killing. Nevertheless, acquittal of the charge does not mean it was improperly submitted to the jury. More to the point, the Michigan Supreme Court recently considered this question and concluded that although "some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation . . . it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Id*. at 242 (quotation marks and citation omitted). The Court further noted that "the deliberation essential to establish murder in the first degree need not have existed for any particular length of time before the killing," *id*. at 243 (quotation marks and citation omitted), and that "premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds,'" *id*. at 242-243 (quotation marks and citation omitted).

Given the ruling in *Oros*, we conclude that there was sufficient evidence for the trial court to submit the charge of first-degree murder to the jury. There was evidence presented that defendant approached the group of people, which included Yurko and Sims, in a hostile manner; defendant repeatedly yelled at Yurko, accusing Yurko's sister of stealing drugs out of defendant's vehicle. While Yurko and defendant were arguing, defendant pulled out a gun from his waistband, aimed the gun over Yurko's shoulder, near her head, and shot into the air. As noted, after defendant fired the gun, Sims stepped between Yurko and defendant and urged him

---

[1] We review de novo a trial court's decision to deny a motion for a directed verdict. *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018). "In reviewing a trial court's decision regarding a motion for directed verdict, we review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2016) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Head*, 323 Mich App 526, 532; 917 NW2d 752 (2018) (quotation marks and citation omitted). "With regard to an actor's intent, because of the difficulties inherent in proving an actor's state of mind, minimal circumstantial evidence is sufficient." *McKewen*, 326 Mich App at 347 n 1 (quotation marks and citation omitted).

to calm down and resolve the dispute through discussion. Defendant responded in a matter of seconds, stating, "F**k that, one of these b*****s took my stack," and then shot the victim in the face. Yurko also testified that, prior to defendant shooting the victim, defendant had turned around as if he was going to leave, and then turned back around and fired the shot that killed Sims. There was evidence presented that the lapse of time from when defendant fired the first shot to the time that he shot Sims in the head ranged from a few seconds to 30 seconds. Pursuant to *Oros*, this evidence was sufficient for a jury to infer premeditation and deliberation.[2]

Because we conclude that submission of the first-degree charge to the jury was consistent with the standard set forth in *Oros*, we need not address whether the jury reached a compromise verdict.

Defendant also argues that his minimum sentence of 70 years' imprisonment for the second-degree murder conviction was unreasonable and disproportionate.[3] Defendant points out that he was 53 years old at the time of sentencing and so will not be eligible for parole until he is 123 years old. He argues that this is a life-without-parole sentence in all but name and that it is disproportionate and effectively substitutes the court's judgment that defendant was guilty of first-degree murder for the jury's rejection of that charge. However, defendant was sentenced as a fourth habitual offender. Given that, defendant's minimum sentence guidelines range for the second-degree murder conviction was calculated at 315 to 1,050 months' imprisonment, i.e., 26¼ to 87½ years' imprisonment. Therefore, his sentence was within the guidelines.

Our review of a sentence within the guidelines range is highly circumscribed. "When a trial court does not depart from the recommended minimum sentencing range, the minimum sentence must be affirmed unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016), citing MCL 769.34(10). Here, defendant does not refer us to any scoring error or inaccurate information on which the trial court relied. A second exception was recently defined by the Michigan Supreme Court in *People v Beck*, ___ Mich ___; ___ NW2d ___ (2019) (Docket No. 152934). In that case, the Court concluded that a sentence, even within guidelines, is unconstitutional if the trial court based the sentence, at least in part, on its conclusion that defendant was guilty of conduct as to which he was acquitted. In this case, however, there is no indication—either explicit or implicit—in the record that the trial court concluded that defendant premeditated the killing of Sims. We therefore affirm his sentence.

---

[2] In *Oros* the majority rejected Justice MCCORMICK's argument in dissent that "[i]f intent to kill plus any time window during which one could have accomplished premeditation and deliberation now amounts to proof beyond a reasonable doubt, then I find it hard to imagine what second-degree murder wouldn't also be a first-degree murder. That can't be constitutional." *Oros*, 502 Mich at 263 (MCCORMICK, J., dissenting).

[3] Generally, "[s]entencing issues are reviewed by this Court for an abuse of discretion by the trial court." *People v Sabin (On Second Remand)*, 242 Mich App 656, 660; 620 NW2d 19 (2000). "A trial court abuses its discretion when it imposes a sentence that is not proportional to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 661.

In defendant's Standard 4 brief, he argues that defense counsel was ineffective for failing to move the trial court to reduce the first-degree murder charge to second-degree murder. We disagree.[4]

In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (quotation marks and citation omitted). There is also a "strong presumption that counsel's performance was born out of sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "This presumption can only be overcome by a showing of counsel's failure to perform an essential duty, which failure was prejudicial to the defendant." *People v Hampton*, 176 Mich App 383, 385; 439 NW2d 365 (1989).

Defendant notes that, during the preliminary examination, defense counsel argued that there was insufficient evidence presented to bind defendant over on first-degree murder, and defense counsel requested that the district court only bind defendant over on second-degree murder. Defendant argues that defense counsel was ineffective for failing to thoroughly review the preliminary examination transcript to familiarize himself with this argument, and for failing to subsequently raise the same argument in the trial court. Defendant asserts that, had defense counsel raised this argument in the trial court, the first-degree murder charge would have been dismissed, and the outcome of defendant's trial would have been different.

Defendant's argument is without merit. As an initial matter, the same defense attorney represented defendant during the preliminary examination and the trial. During the preliminary examination, defense counsel argued that there was insufficient evidence of premeditation and deliberation, and therefore, there was insufficient evidence to bind defendant over to circuit court on the charge of first-degree murder. During trial, at the close of the prosecution's case, defense counsel moved for a directed verdict on the charge of first-degree murder, arguing again that there was insufficient evidence of premeditation and deliberation. Thus, defense counsel raised the exact argument in the trial court that defendant is contending defense counsel should have raised. Therefore, defendant has failed to establish the first prong of ineffective assistance of counsel because there is no evidence that defense counsel's performance fell below the objective standard of reasonableness.

---

[4] "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187-188; 891 NW2d 255 (2016). "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id*. at 188. However, because defendant did not move for a new trial or a *Ginther* hearing in the lower court, no factual record was created in regard to defendant's claim of ineffective assistance of counsel; therefore, this Court's review is limited to mistakes apparent on the record. *Id*.

Defendant also asserts that defense counsel failed to speak with him during the pendency of the trial regarding the "reality of reducing the first[-]degree murder charge to a second[-]degree murder," and therefore, any "advice [defendant] had might have been able to offer his attorney as to the actual shooting was lost." Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Moreover, trial counsel's failure to undertake a reasonable investigation may constitute ineffective assistance of counsel. *Trakhtenberg*, 493 Mich at 51-55.

On the first day of trial, December 11, 2017, defendant requested a new attorney because he felt that defense counsel had not prepared an adequate defense. Defense counsel explained to the trial court that he had reviewed the record extensively, prepared for trial, and developed a trial strategy; defense counsel also explained that he had met with defendant to go through the facts and circumstances of this case and that none of the information defendant had provided to him panned out. On appeal, defendant has failed to set forth any information or evidence that was lost because of defense counsel's alleged failure to adequately communicate with him; rather, defendant merely asserts that defense counsel was ineffective for failing to gather relevant information. Defendant has failed to overcome the "strong presumption that counsel's performance was born out of sound trial strategy," *Trakhtenberg*, 493 Mich at 52, and the presumption that defense counsel rendered effective assistance, *Eisen*, 296 Mich App at 329. Thus, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness.

Even if defense counsel's performance had fallen below an objective standard of reasonableness, defendant would not be entitled to relief because he has not shown that but for counsel's performance, there is a reasonable probability that the outcome of the trial would have been different. First, defendant was acquitted of first-degree murder. Second, Yurko, and two other eyewitnesses all testified that they saw defendant shoot the victim. Two other witnesses testified that they did not see defendant fire the gun, but they heard the gunshots coming from the direction where defendant and Yurko were arguing. There was overwhelming evidence to support the conviction of second-degree murder, and defendant has failed to show what evidence defense counsel failed to obtain that would have affected the outcome of the trial. Thus, defendant failed to establish that he was denied his constitutional right to effective assistance counsel.

Finally, defendant has filed a supplemental Standard 4 brief in which he argues that the court erred in sentencing him as a fourth-felony habitual offender. He claims that one of the prior convictions listed should not have been relied upon because it occurred in 1988 and given its age much of the court file has been purged. He attaches a letter from the circuit court so stating. However, the letter does not state that the entire file has been removed from court records; rather it lists certain documents and transcripts that have been removed and the judgment of conviction and sentence are not included in that list. Most significantly, defendant

has not denied that the 1988 conviction did, in fact, occur.  Accordingly, he is not entitled to relief on this basis.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Brock A. Swartzle