Wilder, J.
**234 This case involves an issue germane to every criminal trial-that is, whether sufficient evidence exists to support a defendant's conviction. In particular, the question before us is whether sufficient evidence exists to support defendant's jury conviction of first-degree premeditated murder, MCL 750.316(1)(a). Defendant does not dispute that he intended to kill the victim, Marie McMillan, when he stabbed her 29 times; rather, he argues that insufficient proofs were presented at trial with regard to the elements of premeditation and deliberation to sustain his conviction. The Court of Appeals agreed, concluding that there was insufficient evidence of premeditation and deliberation, and therefore reduced defendant's first-degree premeditated murder conviction to second-degree murder.
A thorough review of the record requires a contrary result. We hold that the *562 Court of Appeals erred when it improperly usurped the role of the fact-finder and misapplied this Court's opinion in People v. Hoffmeister , 394 Mich. 155, 229 N.W.2d 305 (1975). In lieu of granting leave to appeal, we reverse Part II of the Court Appeals opinion and hold that, based on the record evidence presented at defendant's trial, a reasonable juror could have found that the killing was committed with premeditation and deliberation. Defendant's first-degree premeditated murder conviction and sentence must be reinstated. **235 I. FACTS AND PROCEDURAL HISTORY
On November 22, 2014, defendant went door-to-door targeting the residents of Clayborne Court Apartments in Kalamazoo, Michigan, in an attempt to solicit money. Defendant's ruse was that his girlfriend had left him without access to his vehicle, debit card, or cell phone. Defendant asked each resident if he could use their phone so that he could contact his girlfriend. If allowed to do so, defendant would actually place a call to his own cell phone, which was located inside his vehicle where no one was available to answer it. After an "unsuccessful" call, defendant would directly or indirectly solicit money from each resident, claiming that he needed gas money to get to work. According to one resident, the solicitation started out passive, but quickly turned aggressive. Another resident testified that he felt uncomfortable because he sensed defendant was casing his apartment.
Defendant used this same subterfuge to gain access to the victim's apartment. During the police investigative interview, defendant admitted that he was able to persuade the victim to let him inside the apartment, and once inside, he used the victim's phone just as he had with the other residents. According to defendant, the victim, acting without provocation, struck him over the head with a coffee mug, knocking him to the floor. Defendant further stated that, at some point, the victim climbed on top of him with a "huge knife in her hand." A struggle over the knife ensued, and after defendant gained control over the knife, he began stabbing the victim. The victim sustained a total of 29 stab wounds, 19 of which were inflicted while she was still alive.
**236 Defendant was charged with open murder, MCL 750.316.[1] At the conclusion of defendant's trial, the trial court instructed the jury on the elements of the crimes of first-degree premeditated murder, second-degree murder, and voluntary manslaughter as well as the evidentiary findings beyond a reasonable doubt that were required to convict defendant of any of these crimes. Specifically, the trial court stated:
The Defendant is charged with open murder. To prove first degree premeditated murder, the Prosecutor must prove each of the following elements beyond a reasonable doubt.
First, that the Defendant caused the death of Marie McMillan, that is, that Marie McMillan died as a result of a stabbing. Second, that the Defendant intended to kill Marie McMillan. Third, that this intent to kill was premeditated, that is thought out beforehand. Fourth, that the killing was deliberate which means that the Defendant considered the pros and cons of the killing and thought about and chose his actions before *563 he did it. There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The law does not say how much time is needed. It is for you to decide if enough time passed under the circumstances of this case. The killing cannot be the result of a sudden impulse without thought or reflection. Fifth, that the killing was not justified, excused or done under circumstances that reduce it to a lesser crime.
To prove second degree murder the Prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the Defendant caused the death of Marie McMillan, that is, that Marie McMillan died as a result of a stabbing. Second, that the Defendant had one of these three states of mind: he intended to kill, or he intended to **237 do great bodily harm to Marie McMillan, or he knowingly created a very high risk of death or great bodily harm knowing that death or such harm would be the likely result of actions. Third, that the killing was not justified, excused, or done under circumstances that reduce it to a lesser crime.
In count one, if you find the Defendant guilty of murder you must state in your verdict whether it is murder in the first degree or murder in the second degree.
The crime of murder may be reduced to voluntary manslaughter if the Defendant acted out of passion or anger brought about by adequate cause and before the Defendant had a reasonable time to calm down. For manslaughter, the following two things must be present. First, when the Defendant acted his thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted in impulse without thinking twice from passion instead of judgment. This emotional excitement must have been the result of something that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide.
Second, the killing itself must result from this emotional excitement. The Defendant must have acted before a reasonable time had passed to calm down and return to reason. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case.
The jury retired to deliberate, and following its deliberation, the jury returned, finding defendant guilty of first-degree premeditated murder, MCL 750.316(1)(a). The trial court imposed a life imprisonment sentence without the possibility of parole for that conviction.
Defendant appealed, arguing that the prosecution failed to present sufficient proof to support the elements of premeditation and deliberation, and therefore his first-degree premeditated murder conviction rested **238 upon insufficient evidence. The Court of Appeals agreed with defendant, finding that there was sufficient evidence to support a second-degree murder conviction but not defendant's first-degree premeditated murder jury conviction. People v. Oros , 320 Mich. App. 146, 150, 904 N.W.2d 209 (2017). The Court of Appeals applied the factors set forth in People v. Schollaert , 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992),[2] and explained that it *564 found the circumstances surrounding the killing as the most significant factor. Oros , 320 Mich. App. at 155-156, 904 N.W.2d 209. The Court of Appeals rejected the prosecution's argument that defendant had adequate time to consciously reconsider his actions in a "second look," believing that this Court in Hoffmeister excluded the notion that premeditation could be formed between successive stab wounds. Id . at 156-157, 904 N.W.2d 209. Based on this understanding, the Court of Appeals vacated defendant's first-degree premeditated murder jury conviction, imposed a second-degree murder conviction, and ordered a remand to the trial court for sentencing as to that offense. Id . at 167-168, 904 N.W.2d 209.
The prosecution sought leave to appeal in this Court, and we directed the Clerk to schedule oral argument on the application and the parties to address the following issue:
[W]hether the Court of Appeals properly viewed the trial record for sufficient evidence of premeditation and deliberation in the light most favorable to the prosecution, including drawing all reasonable inferences in favor of the jury verdict, and whether the record evidence is sufficient **239 to sustain defendant's conviction for first-degree premeditated murder. People v. Gonzalez , 468 Mich. 636, 640-641 [664 N.W.2d 159] (2003). [ People v. Oros , 501 Mich. 883, 901 N.W.2d 625 (2017).]
II. STANDARD OF REVIEW
"In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." People v. Harris , 495 Mich. 120, 126, 845 N.W.2d 477 (2014). But more importantly, "[t]he standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." People v. Nowack , 462 Mich. 392, 400, 614 N.W.2d 78 (2000) (quotation marks and citation omitted; emphasis added). "It is for the trier of fact, not the appellate court , to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." People v. Hardiman , 466 Mich. 417, 428, 646 N.W.2d 158 (2002) (emphasis added).
III. LEGAL BACKGROUND
A. FIRST-DEGREE PREMEDITATED MURDER
In pertinent part, to secure a conviction of first-degree premeditated murder, the prosecution must establish beyond a reasonable doubt[3] a "[m]urder perpetrated by means of poison, lying in *565 wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a).[4] Relevant here, "[t]he elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." People v. Bennett , 290 Mich. App. 465, 472, 802 N.W.2d 627 (2010).[5] "Premeditation and deliberation are legislative offspring and are to be construed in the light of the statutory scheme." People v. Morrin , 31 Mich. App. 301, 325, 187 N.W.2d 434 (1971).
The Legislature did not explicitly define the meaning of premeditation and deliberation. However, we have recognized the ordinary meaning of the distinct and separate terms as the following: "[t]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." People v. Woods , 416 Mich. 581, 599 n. 2, 331 N.W.2d 707 (1982) (quotation marks and citation omitted).[6] While the statute may be clear on its face that **241 premeditation and deliberation are separate elements, a rigid and mechanical application is often difficult because the same facts may tend to establish each element, and they are subjective factors usually incapable of direct proof absent an admission or confession by the defendant. See Cardozo, What Medicine Can Do for Law, in Law and Literature and Other Essays and Addresses (New York: Harcourt, Brace & Co., 1931), p. 97 ("[O]n the face of the statute the distinction is clear enough. The difficulty arises when we try to discover what is meant by the words deliberate and premeditated."); see also Morrin , 31 Mich. App. at 331, 187 N.W.2d 434, citing People v. Wolf , 95 Mich. 625, 55 N.W. 357 (1893).
"Since the distinguishing elements of first-degree murder ultimately resolve themselves into questions of fact, minimum standards of proof, if reasonably related to the circumstances which must be proved, will serve to preserve the distinction between first-degree and second-degree murder." Morrin , 31 Mich. App. at 328, 187 N.W.2d 434. "The real focus of first-degree murder jurisprudence in Michigan has been on the kind of evidence which permits an inference of premeditation and deliberation," and that inference may be established "from all the facts of the case."[7] Id . at 328, 331, 187 N.W.2d 434 (emphasis added).
**242 In other words, when considering a sufficiency-of-the-evidence *566 issue, "[t]he question is whether the evidence introduced at the trial fairly supports an inference of premeditation and deliberation." Id . at 331, 187 N.W.2d 434.
B. SECOND LOOK
Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a "second look."[8] People v. Gonzalez , 468 Mich. 636, 641, 664 N.W.2d 159 (2003) ; People v. Tilley , 405 Mich. 38, 45, 273 N.W.2d 471 (1979). That is, "some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation," but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look. See Gonzalez , 468 Mich. at 641, 664 N.W.2d 159 (quotation marks, brackets, and citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination," Tilley , 405 Mich. at 45, 273 N.W.2d 471 (quotation marks and citation omitted), "[i]t is often said that premeditation and deliberation **243 require only a 'brief moment of thought' or a 'matter of seconds,' " 2 LaFave, Substantive Criminal Law (3d ed.), § 14.7(a), p. 650 (citations omitted).[9] "By the weight of authority the deliberation essential to establish murder in the first degree need not have existed for any particular length of time before the killing." 4 Blackstone, Commentaries on the Laws of England, p. *195 n. 14. "The time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. The question of deliberation, when all the circumstances appear, is one of plain common sense; and an intelligent jury can seldom be at a loss to determine it." People v. Holmes , 111 Mich. 364, 372, 69 N.W. 501 (1896) (quotation marks and citation omitted).
"The requisite state of mind may be inferred from defendant's conduct *567 judged in light of the circumstances." Hoffmeister , 394 Mich. at 159, 229 N.W.2d 305. In other words, what constitutes sufficient evidence to support the **244 elements of premeditation and deliberation may vary from case to case because the factual circumstances will vary, but the ultimate answer may be resolved in determining whether reasonable inferences may be made to support the fact-finder's verdict. For example, in People v. Johnson , 460 Mich. 720, 733, 597 N.W.2d 73 (1999), this Court held that evidence of a struggle between the defendant and the victim can be evidence of premeditation and deliberation based on the defendant's opportunity to take a "second look." And this Court has also held that "[m]anual strangulation can be used as evidence that a defendant had an opportunity to take a 'second look.' " Gonzalez , 468 Mich. at 641, 664 N.W.2d 159. But in Hoffmeister , this Court found that insufficient evidence existed to show premeditation and deliberation because, when the only evidence presented was the number of stab wounds, there was no basis for the jury to conclude that the defendant had adequate time for a "second look." Hoffmeister , 394 Mich. at 159, 161, 229 N.W.2d 305.
IV. APPLICATION
With this legal background in mind, we now turn to the application of these principles in the instant case. Upon a review of the record in the light most favorable to the prosecution, it is apparent that a rational trier of fact, in this case the jury, had sufficient evidence from which to draw reasonable inferences that defendant acted with premeditation and deliberation.[10]
**245 Defendant first told the lead detective that there were two men in the victim's apartment who struck him in the head with a stick and that he was able to run away without incident. According to the detective, defendant then changed his story and admitted that the victim allowed him to come inside her apartment. Once inside, defendant sat at a computer desk to use the telephone. At that point, defendant claimed that the victim struck him over the head with a coffee mug, knocking him to the ground, and climbed on top of him with "a huge knife in her hand." Defendant stated that he was pinned down on the ground by the victim for two hours. A struggle ensued, and at some point, defendant stated that he was able to gain control of the knife. While holding the knife in one hand, defendant punched the victim in the face with his other fist. He then proceeded to stab the victim in the stomach.
The prosecution presented evidence that directly conflicted with defendant's description of what transpired in the apartment.
*568 That evidence included the following: (1) defendant did not have any head injuries consistent with his claim that the victim struck him over the head with a coffee mug, and (2) shattered pieces of the coffee mug collected at the scene were DNA tested, revealing the presence of the victim's blood and hair-not defendant's. The jury chose to **246 resolve the conflicting evidence in favor of the prosecution. See Hardiman , 466 Mich. at 431, 646 N.W.2d 158 (stating that it is the jury's function to weigh competing evidence). On appellate review, we accept as true the evidence contradicting defendant's version of the crime, as we must consider the evidence in a light most favorable to the prosecution, see People v. Wolfe , 440 Mich. 508, 515, 489 N.W.2d 748 (1992) ("[T]his Court determined long ago that when an appellate court reviews the evidence supporting a conviction, factual conflicts are to be viewed in a light favorable to the prosecution[.]"), and view every reasonable inference in favor of the jury verdict. We conclude that from this evidence, an inference may be fairly drawn that defendant was the initial aggressor and not the victim, as defendant had claimed.
Evidence of defendant's conflicting statements and that he was the initial aggressor allowed the jury to infer that he acted without provocation and in a cool state of mind rather than on impulse when his assaultive conduct escalated from striking the victim in the head with a coffee mug to gaining control of a kitchen knife, to punching the victim in the face, to finally stabbing the victim 29 times to her death. See Holmes , 111 Mich. at 372, 69 N.W. 501 ("[W]henever murder is intentionally committed, without serious provocation, and under circumstances which do not reasonably account for such an excitement of passion as naturally deprives men of deliberation, common experience teaches us that such an act is wanton, and its perpetrator responsible for it, as in other cases of cold-blooded crime."). An inference of each element of premeditation and deliberation may be drawn from this evidence-that is, defendant thought about killing the victim before proceeding **247 to kill the victim, and defendant measured and evaluated his choices before proceeding to kill the victim.
By defendant's own admission, these acts were distinct and separate from one another. While we are incapable of pinpointing the exact moment defendant thought about killing the victim and measured and evaluated his choices, the inference may be drawn that his decision to kill the victim and his evaluation of his options arose separately before he obtained a lethal weapon. It is possible defendant may have thought about the killing before first striking the victim over the head with a coffee mug or when he punched the victim in the face.[11] Either way, both acts support *569 the inference that defendant had and took time for reflection before proceeding to stab the victim. **248 That is because defendant had to think about obtaining the knife-a lethal weapon-to accomplish his desired act of killing the victim. The prosecution argued that defendant may have retrieved the knife from the victim's kitchen, while defendant told the police that he obtained the knife from the victim herself after struggling with her for it. Either way, a period of time between the initial homicidal intent and the ultimate killing existed, during which defendant could have taken a "second look."[12] See, e.g., People v. Waters , 118 Mich. App. 176, 187, 324 N.W.2d 564 (1982) (finding that an inference could be made that the formation of the homicidal intent occurred between the time that the defendant drew the weapon from his waistband and the instant he pulled the trigger).
Likewise, it is reasonable to infer that defendant had the opportunity for a "second look" during the period of time that elapsed when he flipped the victim over to position her face down on the floor, climbed onto her back, and then continued to stab her. It took thought and reflection to flip the victim over, permitting an inference that defendant acted with both premeditation and deliberation. Moreover, the location and depth of the victim's stab wounds support an inference that defendant thought about, measured, and evaluated his options. Many of the stab wounds were anywhere from 2 to 5 inches deep, which would **249 indicate the amount of force used to not only plunge the knife into the victim's body, but also to retract it. Given the amount of effort expended for these particular stab wounds, it was reasonable for the jury to infer that sufficient time existed between each stab wound to allow defendant the opportunity to take a "second look." Therefore, given the record evidence, which reveals that defendant's action escalated from physically assaultive conduct to the repeated use of a lethal weapon over an unspecified interval of time, we conclude that a reasonable juror could have found that the killing was committed with premeditation and deliberation.
Our holding is consistent with Hoffmeister as we do not hold today that the sheer number of stab wounds alone established the elements of premeditation and deliberation. Cf. Hoffmeister , 394 Mich. at 159, 229 N.W.2d 305 ("The brutality of a killing does not itself justify an inference of premeditation and deliberation. 'The mere fact that the killing was attended by much violence or that a great many wounds were inflicted is not relevant (on the issue of premeditation and deliberation), as such a killing is just as likely (or perhaps more likely) to have been on impulse.' ") (citation *570 omitted).[13] Rather, we hold that the jury could reasonably infer and find from the factual record-separate and distinct from the sheer number of stab wounds alone-that defendant had an opportunity to subject his actions to a "second look," and therefore acted with premeditation and deliberation. See Tilley , 405 Mich. at 45-46, 273 N.W.2d 471. We emphasize that the application of such principles may vary **250 from case to case because the inquiry is highly dependent on the facts of each case.[14] However, the fundamental principles remain the same-sufficient evidence must exist to support each element of first-degree premeditated murder.
V. CONCLUSION
For the foregoing reasons, we conclude that the jury had sufficient evidence from which it could conclude beyond a reasonable doubt that defendant was guilty of first-degree premeditated murder. The Court of Appeals erred by holding otherwise. For this reason, we reverse Part II of the Court of Appeals opinion and reinstate defendant's first-degree premeditated murder conviction and sentence.
Stephen J. Markman, C.J., Brian K. Zahra, J., Richard H. Bernstein, J., Elizabeth T. Clement, J., concur.

Defendant was also charged with first-degree felony murder, MCL 750.316(1)(b), first-degree arson, MCL 750.72, second-degree home invasion, MCL 750.110a(3), and escape while awaiting trial, MCL 750.197(2), but those convictions are not presently before us on appeal.

In Schollaert , the Court of Appeals set forth the following factors to consider when determining whether premeditation has been established: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." Schollaert , 194 Mich. App. at 170, 486 N.W.2d 312.

Indeed, due process requires the prosecution to prove every element beyond a reasonable doubt. Patterson v. New York , 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Inferences generally do not affect the application of this standard because it leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof to the defendant. Co. Court of Ulster Co., NY v. Allen , 442 U.S. 140, 157, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). The exception is, of course, if "there is no rational way the trier could make the connection permitted by the inference." Id . (emphasis added).

Cf. People v. Blevins , 314 Mich. App. 339, 358, 886 N.W.2d 456 (2016) ("Second-degree murder is any kind of murder not otherwise specified in the first-degree murder statute. MCL 750.317. It is well established that 'second-degree murder is first-degree murder minus premeditation' ...."), quoting People v. Carter , 395 Mich. 434, 438, 236 N.W.2d 500 (1975).

Defendant does not dispute that he intentionally killed the victim. Thus, we will focus only on the elements of premeditation and deliberation.

The meaning of premeditation and deliberation, and the relation of "second look" law to those elements, is well engrained in our state's jurisprudence, and notably, neither party has asked that the state of our law be changed. Therefore, unlike the dissent, we decline to redefine the meaning that our jurisprudence has attached to the elements of premeditation and deliberation, and the relation of second-look law, which is discussed in more detail below, to those elements. See post at 571, 572 ( McCormack , J., dissenting) ("[A] deliberate and premeditated killing requires proof beyond merely thinking twice-the prosecutor must show that the perpetrator's thought process had the right timing (premeditated) and was of the right quality (deliberate)"; "sufficient opportunity to take a second look is better thought of as a precondition for a finding of premeditation and deliberation.").

An inference is the logical bridge between a fact believed to be true and a second fact, the truth of which is at issue. Dressler, Understanding Criminal Law (3d ed.), § 8.03, p. 77. "The jury is permitted to infer from one fact the existence of another essential to guilt, if reason and experience support the inference. In many circumstances courts hold that proof of the first fact furnishes a basis for inference of the existence of the second." Tot v. United States , 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

Although not in dispute, it is important to note that the jury in the instant case was instructed on "second look." Specifically, the trial court articulated the following instruction: "There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The law does not say how much time is needed. It is for you to decide if enough time passed under the circumstances of this case. The killing cannot be the result of a sudden impulse without thought or reflection."

Second-look law has been well established in Michigan for over a hundred and fifty years-dating back even before the codification of the degrees of murder. See Maher v. People , 10 Mich. 212, 223-224 (1862) ("No precise time, therefore, in hours or minutes , can be laid down by the court, as a rule of law, within which the passions must be held to have subsided and reason to have resumed its control, without setting at defiance the laws of man's nature, and ignoring the very principle on which provocation and passion are allowed to be shown, at all, in mitigation of the offense. The question is one of reasonable time, depending upon all the circumstances of the particular case; and where the law has not defined, and can not without gross injustice define the precise time which shall be deemed reasonable, as it has with respect to notice of the dishonor of commercial paper. In such case, where the law has defined what shall be reasonable time, the question of such reasonable time, the facts being found by the jury, is one of law for the court; but in all other cases it is a question of fact for the jury; and the court can not take it from the jury by assuming to decide it as a question of law, without confounding the respective provinces of the court and jury[.]").

Rather than treating this as a sufficiency-of-the-evidence issue, which arises after the fact-finder has already found the defendant guilty of the charged crime, the dissent implicitly treats this issue as the appellate review of a motion for directed verdict or an instructional question examining whether the charge should have been submitted to the jury in the first instance. This is not, however, the posture of the case before us, as defendant has not raised either of those issues. Instead, the first-degree premeditated murder charge was submitted to the jury (along with second-degree murder and voluntary manslaughter) as is appropriate when a defendant has been charged with open murder. After deliberating, the jury found defendant guilty of first-degree premeditated murder. Having been charged with open murder, it was the province of the jury, and not of the court, to measure the quantity of proof and decide whether there was sufficient evidence to support a first-degree premeditated murder conviction. People v. Collins , 303 Mich. 34, 51, 5 N.W.2d 556 (1942). Therefore, our focus at this juncture is determining whether sufficient evidence was presented at defendant's trial to support the verdict rendered by the jury.

There is ample authority holding that when the evidence permits a jury to infer that the defendant had the opportunity to premeditate, this alone is sufficient evidence that he or she did so. Examples include Tilley , 405 Mich. at 45, 273 N.W.2d 471 (holding that the jury had sufficient evidence to support the conclusion of ample opportunity to premeditate and deliberate in the interval of time between the defendant securing possession of the gun and the volley of shots as the victim was retreating); see also People v. DeRuyscher , 29 Mich. App. 515, 517-518, 185 N.W.2d 561 (1971) (holding that a sufficient lapse of time between the defendant's separate acts of hitting, kicking, and stomping allowed the possibility that the defendant acted with premeditation and holding that the weight of such evidence was within the province of the jury); People v. Statkiewicz , 247 Mich. 260, 264, 225 N.W. 540 (1929) (holding that the defendant had ample time, i.e., opportunity, to form malice and that it was for the jury to determine the intent with which the shooting was done); People v. Bigelow , 225 Mich. App. 806, 571 N.W.2d 520 (1997), special panel convened, opinion vacated on other grounds (September 16, 1997), and opinion reinstated 229 Mich. App. 218, 581 N.W.2d 744 (1998) (holding that sufficient evidence of first-degree premeditated murder existed when evidence revealed, in relevant part, that defendant did not initially plan to participate in the murder but at the scene, he found a letter opener, which was used by another perpetrator to stab the victim).

The dissent asserts that the mere passage of time cannot alone constitute sufficient evidence of premeditation and deliberation to sustain a conviction of first-degree murder. However, as noted earlier, our caselaw has consistently recognized that the requisite premeditation and deliberation can be formed solely in the amount of time necessary to take a "second look." If premeditation and deliberation can be formed in the passage of time needed to take a "second look," then it necessarily follows that the passage of time might be the only evidence of premeditation and deliberation in light of the surrounding circumstances and that this would be sufficient to sustain the conviction.

The prosecution in Hoffmeister conceded that the stab wounds" 'were probably [inflicted] in rapid succession ....' " Hoffmeister , 394 Mich. at 159 n. 4, 229 N.W.2d 305. In this case, the prosecution has made no such concession.

See People v. Meier , 47 Mich. App. 179, 183, 209 N.W.2d 311 (1973) (recognizing that the circumstances in which proof of premeditation and deliberation are shown is a question without a consistent answer because no two murders, or murderers, are alike).