*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA TYKRIE JONES,

        Defendant-Appellant.

UNPUBLISHED
July 20, 2023

No. 362465
Wayne Circuit Court
LC No. 18-000194-01-FC

Before: GADOLA, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his bench trial conviction of carjacking, MCL 750.529a, and his sentence of 7 to 15 years' imprisonment. We affirm.

## I. BACKGROUND

The victim in this case was approached by a man on a bicycle when she was walking to her car outside of a Dollar General store. The man demanded she give him her car keys, she refused, and then she started to run. The man jumped off of his bike, stuck his hand into his pocket, and chased her. The victim dropped her keys and ran, and subsequently she paused to look back and saw the man using her keys to get into her car and drive away. When the victim first saw the man in the parking lot, he was about 15 to 20 feet away. She looked at the man's face while he was looking right at her, and she noticed the man was wearing a maroon bubble coat with the hood pulled up and his mouth covered, black pants, and white shoes. She saw the man's eyebrows, eyes, and nose, and described him as having "beady eyes and a big nose." She first said the carjacker had dark skin, but later changed her description to medium to dark skin. She first indicated the carjacker was under 25 years old, but later said he was 18 to 20 years old, approximately 5 feet 7 inches tall, and skinny.

---

[1] *People v Jones*, unpublished order of the Court of Appeals, entered December 22, 2022 (Docket No. 362465).

The day following the carjacking, the victim saw her car being driven past her mother's house, so the victim and her mother followed it and called the police. The victim testified at trial that there was no doubt in her mind defendant was the carjacker. She also picked defendant from a photographic lineup four days after the carjacking and confirmed that she chose defendant from the photographic lineup because he was the man she saw at the Dollar General, not because he was the man she saw get out of her car on the day after the carjacking. A security camera video taken at the Dollar General on the day of the carjacking was played for the trial court, and Detective Shawn Schmelter testified the carjacker was wearing a red jacket, white shoes, and black pants. Detective Schmelter testified that the clothes defendant was wearing in a picture on defendant's Facebook page were very similar to the clothes the carjacker was wearing, if not identical thereto. This was particularly true of the shoes. This picture was posted on Facebook three days after the robbery. Finally, defendant was one of the people who were in the stolen car when the police recovered it.

Defendant testified that he was 17 years old on the day of the carjacking. Defendant said he bought the coat and shoes he was wearing in the Facebook picture from Joshua Brooks on November 19, 2017. Brooks was one of the other two people in the stolen vehicle when the police recovered it, and was also arrested for armed robbery and driving a stolen vehicle. Defendant admitted he was in the car on November 18, 2017, but denied having any knowledge of or role in the carjacking. Defendant claimed his friend, Jaron Hanley, was driving the stolen vehicle, and that defendant did not know it was stolen. Defendant admitted the jacket and shoes he was wearing in the Facebook picture looked like the jacket and shoes the carjacker was wearing in the Dollar General security camera video.

At the conclusion of the bench trial, the court found defendant guilty of carjacking, but not guilty of armed robbery.

## II. SUFFICIENCY

Defendant argues that there was insufficient evidence to prove beyond a reasonable doubt that he was the carjacker. We disagree

"Challenges to the sufficiency of the evidence are reviewed de novo." *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "When ascertaining whether sufficient evidence was presented in a bench trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008) (citation omitted). A reviewing court must draw all reasonable inferences and make credibility choices in support of the fact-finder's verdict. *People v Oros*, 502 Mich 229, 244; 917 NW2d 559 (2018). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619 (citation omitted). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).

"[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021) (citation omitted).

Defendant does not contest that the elements of carjacking were proved beyond a reasonable doubt; defendant only disputes whether the prosecution presented sufficient evidence to identify him as the carjacker. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Defendant argues that the victim could not have been able to accurately identify the carjacker because she only saw him for 15 seconds, was unable to see his mouth, and gave contradictory descriptions of him. When evaluating the credibility of an identification, this Court is bound to draw all reasonable inferences and make credibility choices in support of the fact-finder's verdict. *Oros*, 502 Mich at 244.

The evidence in the record suggests that the victim was able to observe and remember what defendant looked like, demonstrating that her identification of defendant as the carjacker was reliable and sufficient to convict him. First, her detailed description of defendant's outfit to the police was consistent with the Dollar General's security camera footage that captured defendant's outfit. The victim recalled defendant was wearing a maroon bubble coat, black pants, and white shoes. Detective Schmelter testified the Dollar General's security camera footage revealed the carjacker was wearing a red jacket, black pants, and white shoes. Second, the victim's age descriptions of the carjacker were consistent and fairly accurate. In one description, she said the carjacker was no older than 25. In another, she described the carjacker as 18 to 20 years old. Both of these descriptions cover the same age range, as 18 to 20 years old describes a man who is 25 or younger. Defendant was 17 years old when the carjacking occurred, making the victim's estimate that he was 18 to 20, or at least under 25, fairly accurate. Third, the victim confidently identified defendant in the photographic lineup and at trial. This identification of defendant as the carjacker was corroborated by the Facebook picture posted just three days after the carjacking in which defendant was wearing the same clothes the carjacker wore, or very similar ones. Defendant even wore white shoes to a pretrial hearing that appeared to be the same shoes that were worn by the carjacker and by defendant in the Facebook post. The victim testified at trial that she was sure defendant was the carjacker.

The victim's testimony was not the only evidence in the record to establish defendant was the carjacker. In addition to the Facebook picture showing defendant dressed like the carjacker, defendant was one of the people riding in the stolen car when it was recovered three days after the carjacking. Importantly, the trial court found defendant's testimony lacked credibility, particularly defendant's claim that he purchased the clothing he wore in the Facebook picture from Brooks two days after the carjacking—just happening to select all the pieces that looked like the clothes the carjacker wore. See *Kanaan*, 278 Mich App at 619 ("This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." (citation omitted)). The trial court also did not find defendant's claim credible that he was simply sitting in the stolen vehicle by happenstance the day after the car was stolen, and two days later when the vehicle was recovered.

Therefore, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant was the carjacker.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel because defense counsel failed to request a postconviction Holmes Youthful Trainee Act (HYTA)[2] settlement deal. We disagree.

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021) (quotation marks and citation omitted). "A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. Clear error exists where the reviewing court is left with a "definite and firm conviction" that the lower court made a mistake. *Id*.

To prevail on a claim of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

MCL 762.11(1) and (2) explain that HYTA status is available for certain individuals who pleaded guilty to a criminal offense. Defendant was offered a HYTA plea deal in this case, but he rejected it, choosing rather to maintain his innocence and go to trial. Importantly, defendant does not allege defense counsel was ineffective either before or during trial, nor does defendant claim he should be allowed to retroactively accept the HYTA deal he rejected. Rather, defendant claims defense counsel was obligated to seek a postconviction settlement offer from the prosecution because defendant proceeded with trial on the belief he was innocent and that the trier of fact could not find he was the perpetrator.

Defendant argues that MCL 762.11(2) suggests the prosecution can offer a new HYTA settlement after a defendant has been convicted, but before sentencing, and that defense counsel's performance was deficient because she did not request that the prosecution do so in this case. MCL 762.11(2) provides in relevant part:

> [I]f an individual pleads guilty to a criminal offense, committed on or after the individual's eighteenth birthday but before his or her twenty-sixth birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee.

This provision clearly requires a guilty plea. Defendant was ineligible for a HYTA plea agreement in between his bench trial and sentencing because defendant had already rejected the HYTA offer the prosecution made him, and proceeded to trial where he was convicted of carjacking. Therefore, defendant's claim, that defense counsel was ineffective for failing to seek a settlement offer that was not available under the HYTA statute, is meritless.

IV. SENTENCING

---

[2] MCL 762.11 *et seq*.

Finally, defendant argues OV 1 was improperly scored because the trial court did not apply the OV 1 scoring exception designed for felonious assault and armed robbery, despite carjacking being nearly identical to the latter crime. We disagree.

For issues pertaining to sentencing guidelines scoring on appeal, "the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. "The role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute." *Sanford v State*, 506 Mich 10, 14-15; 954 NW2d 82 (2020) (quotation marks and citation omitted). "When the statutory language is clear and unambiguous, judicial construction is limited to enforcement of the statute as written." *Id*. at 15 (citation omitted).

OV 1 "is the aggravated use of a weapon." MCL 777.31(1). *People v Brooks*, 304 Mich App 318, 320; 848 NW2d 161 (2014). It is appropriate to assess 5 points for OV 1 if "[a] weapon was displayed or implied" during the commission of the crime. MCL 777.31(1)(e). However, it is not permissible to assess 5 points for OV 1 for the offenses of armed robbery or felonious assault. MCL 777.31(2)(e). Defendant does not contest that he implied he had a weapon when he reached his hand into his pocket after the victim refused to give him her keys. Rather, defendant argues that "[i]t makes no practical sense to the defense to assess points under OV 1 to charges of carjacking but not armed robbery, a similar offense in nearly all respects." Defendant submits that "[i]f an exception exists for one of these charges it should be made available for both crimes." The similarity of carjacking and armed robbery is irrelevant because the statutory language in MCL 777.31(2)(e) is clear and unambiguous, limiting the exception to armed robbery and felonious assault. *Sanford*, 506 Mich at 15. Because MCL 777.31(2)(e) specifically lists only two offenses for which OV 1 should not be assessed at 5 points regardless of whether the crime satisfied the criteria in MCL 777.31(1)(e), it is clear that the legislative intent was to limit the exception to the two enumerated offenses. See *id*. at 15 (explaining a statute's express language "offers the most reliable evidence of the Legislature's intent."). Therefore, we reject defendant's argument that carjacking fits within the exception to the scoring of OV 1 in MCL 777.31(2)(e).

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado