*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JACOB ALEC RYAN,

        Defendant-Appellant.

UNPUBLISHED
December 17, 2024
11:10 AM

No. 366401
Kent Circuit Court
LC No. 22-000374-FC

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions for one count of first-degree premeditated murder, MCL 750.316, and two counts of assault with intent to commit murder, MCL 750.83. We affirm.

## I. FACTS

Defendant was in a long-distance relationship with the victim when he came to visit her from out of state. One afternoon, defendant and the victim got into an argument. Defendant went to the house of the victim's friend, and the friend recounted that defendant wanted to retrieve his clothes from the victim's house and go back to his home state. In the early hours of the following day, defendant stabbed the victim 42 times. The evidence showed that there was a struggle between defendant and the victim, during which defendant chased the victim from upstairs to downstairs and stabbed her in the back, chest, and abdomen, before lethally stabbing her in the neck.

When officers arrived at the victim's home that evening in response to a wellness check call, officers found the victim, naked and stabbed, as well as her two children from a previous relationship, LP, age five, and PH, age two. Officers took the children out of the home and noticed that they also had knife wounds across their throats. When the officers asked the children who did this to them, LP said, "Daddy did it." The children were taken to the hospital where they were treated for life-threatening wounds; LP's wounds were a millimeter from her jugular veins and carotid arteries, and PH's wounds cut down to his windpipe. After four days, the children made full recoveries and were discharged.

-1-

Officers apprehended defendant on a bus in Toledo, Ohio, approximately 24 hours after he killed the victim. Once in custody, defendant confessed to stabbing the victim with a kitchen knife but denied any involvement with her children's injuries. Officers collected video surveillance footage showing defendant changing his clothes and dumping bloody clothes into a nearby dumpster a few hours after the stabbing. Officers also collected video footage showing defendant purchasing a bus ticket with injured, bloody hands. Crime scene technicians collected and tested DNA samples from defendant, the victim, and the kitchen knife. The results corroborated defendant as the perpetrator. However, aside from photographs of their wounds and collecting PH's onesie, officers did not collect or test evidence pertaining to the children.

The jury convicted defendant as previously described. This appeal followed.

## II. INSUFFICIENT EVIDENCE

Defendant argues that there was insufficient evidence to show that (1) defendant's killing of the victim was premeditated, and (2) defendant was the perpetrator of the children's assaults.[1] We disagree as to both arguments.

## A. STANDARD OF REVIEW

"This Court reviews a challenge to the sufficiency of the evidence by examining the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Clark*, 330 Mich App 392, 436; 948 NW2d 604 (2019) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of a crime, and it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Walker*, 330 Mich App 378, 382; 948 NW2d 122 (2019) (quotation marks, citations, and alteration omitted). "The prosecution need not negate every theory consistent with innocence, but is obligated to prove its own theory beyond a reasonable doubt, in the face of whatever contradictory evidence the defendant may provide." *People v Chapo*, 283 Mich App 360, 363-364; 770 NW2d 68 (2009).

"All conflicting evidence, and any reasonable inferences that may be drawn from that evidence, must be resolved in favor of the prosecution." *People v Baskerville*, 333 Mich App 276, 282-283; 963 NW2d 620 (2020). It is the trier of fact's role to determine "the weight of the evidence [and] the credibility of witnesses," and we will not interfere with that role. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "[A] reviewing court is *required* to draw

---

[1] At trial, defendant moved for directed verdict on these grounds as well; to the extent he intends to challenge on appeal not just the sufficiency of the evidence supporting the jury's verdict but also the trial court's denial of that motion, the outcome of our analysis is the same. See *People v Thurmond*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361302); slip op at 2 (explaining that the "same standards [for reviewing a sufficiency-of-the-evidence challenge] apply to a motion for a directed verdict or a JNOV").

all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

## B. PREMEDITATION

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (quotation marks and citation omitted). In this case, defendant concedes that the first element of first-degree murder—the intentional killing of a human—was satisfied when he confessed to stabbing the victim. Defendant argues, however, that there was insufficient evidence to demonstrate that he premeditated the killing, and instead his actions were the result of a blind, blackout rage.

Premeditation means "to think about beforehand," and deliberation means "to measure and evaluate the major facets of a choice or problem." *Id*. at 266. "Premeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *Id*. (quotation marks and citation omitted). "Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a second look." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 10 (quotation marks and citation omitted). "[S]ome time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Oros*, 502 Mich at 242 (quotation marks and citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, it is often said that premeditation and deliberation require only a brief moment of thought or a matter of seconds." *Smith*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted). Premeditation and deliberation may also be established through evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Walker*, 330 Mich App at 384 (quotation marks and citation omitted). For example, the nature and number of a victim's wounds may be used to support a finding of premeditation and deliberation. *People v Unger*, 278 Mich App 210, 231; 749 NW2d 272 (2008). That said, "the brutality of a killing alone does not support the elements of premeditation and deliberation." *Smith*, ___ Mich App at ___; slip op at 11. See also *Oros*, 502 Mich at 249 (recognizing that "the sheer number of stab wounds alone" is not enough in itself to establish premeditation and deliberation).

The prosecution in this case presented sufficient evidence from which a rational jury could conclude beyond a reasonable doubt that defendant intentionally killed the victim with premeditation and deliberation. To start, the record showed that defendant and the victim had been in a relationship that had recently deteriorated against defendant's wishes. The two had known each other for a while, and had been involved with each other for at least a few months before the killing. As defendant and the victim's friend both stated, defendant and the victim got into an argument the day before the victim was killed. The victim's friend testified that defendant seemed upset but "determined" to continue the relationship, whereas the victim seemed relatively calm and uninterested in being with defendant anymore. Furthermore, the autopsy evidence showed

that the victim was stabbed 42 times in the back, chest, abdomen, hands, and neck, with the location of the wounds on the victim's back and neck particularly indicating that defendant had time to consider his actions. See *Oros*, 502 Mich at 248-249; *Unger*, 278 Mich App at 231. The autopsy also showed evidence of defensive wounds on the victim's hands, while defendant's hand injuries were consistent with cuts received from wielding a slippery, bloody knife, rather than defending himself from one. See *People v Johnson*, 460 Mich 720, 733; 597 NW2d 73 (1999) ("[D]efensive wounds suffered by a victim can be evidence of premeditation."). And the blood splatter testimony, the victim's bruised and swollen face, and defendant's admissions further showed that the killing was preceded by a struggle between the victim and defendant. See *Oros*, 502 Mich at 244 (noting that "evidence of a struggle between the defendant and the victim can be evidence of premeditation and deliberation"). Together, this evidence indicates that defendant struggled with the victim, chased her, and repeatedly stabbed her as she tried to defend herself and get away— and that there was sufficient time and opportunity for defendant not only to form the intent to kill the victim, but to consider that course of action and take a "second look." See *id.* at 242-243.

When viewing this evidence in a light most favorable to the prosecution, a reasonable jury could have concluded beyond a reasonable doubt that defendant intended to kill the victim and did so with premeditation and deliberation. See *id.*; *Walker*, 330 Mich App at 384. See also *Clark*, 330 Mich App at 436. Therefore, we find no merit in defendant's claim that there was insufficient evidence to support his conviction of first-degree premeditated murder.

## C. IDENTITY

The elements for assault with intent to commit murder are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citations omitted). In addition, "it is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Identification may be established through eyewitnesses or through circumstantial evidence. *Bass*, 317 Mich App at 264; *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). In this case, defendant only contends that the evidence was insufficient for a rational juror to find beyond reasonable doubt that he was the perpetrator of the assaults against the children; he does not otherwise challenge the elements of those offenses.

We conclude that the overlapping time, place, and manner evidence between the victim's murder and the children's assaults was sufficient to permit a rational jury to conclude beyond a reasonable doubt that defendant was the perpetrator of the assaults. First, the weapon used to harm the children was a blade-like object, and defendant used a kitchen knife to stab the victim. Second, the type of wounds that the children sustained—slits to the throat—were of the same kind that the victim had sustained. Third, the victim's approximate time of death matches the approximate time in which the children's throats were slit. Fourth, the record showed that the victim's house doors were locked when the officers arrived, and defendant's confession corroborates the fact that there was no one else in the apartment when he killed the victim.

Defendant does not address why this evidence was insufficient, but instead points to other aspects of the record that he maintains are favorable to him. Defendant stresses that there was no direct physical or DNA evidence connecting him to the wounds suffered by the children. While such evidence certainly would have made the case against him stronger, defendant fails to explain

why its absence would necessarily render the other evidence of his guilt insufficient. Defendant also notes that, when asked at the scene of the crime who did it, LP (who was not his child) did not expressly identify him, instead saying, "Daddy did it." To the extent defendant suggests that this inculpates LP's biological father, he has not identified anything in the record that would otherwise substantiate that theory, and to sufficiently prove defendant's guilt, "[t]he prosecution need not negate every theory consistent with innocence." *Chapo*, 283 Mich App at 363. Nor has defendant demonstrated why it would have been irrational for the jury to not afford much weight either way to LP's statement, given its lack of precision, LP's young age, and the intense trauma she had just experienced—or, for that matter, why it would have been irrational for the jury to infer that LP may have been referring to defendant, given that he was an adult male who had recently been in a relationship with the child's mother. See *People v Haynes*, 338 Mich App 392, 423; 980 NW2d 66 (2021) (explaining that, in the context of a sufficiency challenge, "it does not matter that the evidence gives rise to multiple inferences or further inferences; it is for the jury alone to determine what inferences to draw"); see also *Davis*, 241 Mich App at 700 (noting that "[t]he credibility of identification testimony is a question for the trier of fact that [this Court does] not resolve anew").

As discussed, when evaluating the sufficiency of the evidence, "[a]ll conflicting evidence, and any reasonable inferences that may be drawn from that evidence, must be resolved in favor of the prosecution," *Baskerville*, 333 Mich App at 282-283, and "a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict," *Oros*, 502 Mich at 239. Defendant has, at best, identified aspects of the proofs that the jury could have viewed in a manner more favorable to him. He has not demonstrated that the proofs, when viewed in their entirety and in the light most favorable to the prosecution, were insufficient to permit a reasonable jury to conclude beyond a reasonable doubt that he was the perpetrator the children's assaults. Accordingly, we find no merit in this sufficiency challenge, either.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani

-5-