*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN ALBERT GERMAIN,

        Defendant-Appellant.

UNPUBLISHED
February 20, 2025
9:49 AM

No. 368891
St. Clair Circuit Court
LC No. 22-001971-FC

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction for first-degree murder, MCL 750.316, under two theories: premeditated murder, MCL 750.316(1)(a), and felony murder, MCL 750.316(1)(b). Defendant was sentenced to life imprisonment. We affirm.

This case arises out of the May 1997 stabbing death of the victim, Virginia Farrell. The victim was discovered by her neighbors, deceased in her home, with her bathrobe and nightgown pulled up and her underwear removed and discarded on the floor nearby. An autopsy determined she died of multiple stab wounds. Screens from the windows outside her home had been cut, and a palm print was recovered from one of the windows. A pubic hair from an unknown donor was found on top of the victim and collected for testing. The Michigan State Police investigated numerous people in relation to the victim's death, but none were charged. At some point, the investigation into the victim's death was halted.

In 2008, Michigan State Police Detective Sergeant Patrick Young renewed the investigation and asked a forensic scientist to reexamine the victim's fingernails for DNA. After testing the victim's fingernail clippings, the forensic unit obtained a full DNA profile from underneath the left fingernails, with the major donor being the victim and the minor donor being an "unidentified or unknown male donor." The minor donor profile was entered into the Combined DNA Indexing System (CODIS) in 2019, and returned a match to defendant. Defendant's palm print was also determined to be a match to the palm print left on the victim's window.

Subsequent DNA testing showed the DNA underneath the victim's left fingernails had three donors. Lynne Helton, an expert in forensic biology and DNA analysis, testified this was

-1-

not unexpected because of the sensitivity of modern equipment and DNA advancements. Helton testified the third donor was "very limited." Testing resulted in "very strong support" the minor donor sample belonged to defendant. The likelihood the DNA belonged to the victim, defendant, and a third, unknown donor, was "at least 55 trillion times more likely" than if it belonged to the victim and two unknown donors unrelated to defendant.

Helton compared the DNA profile obtained from the pubic hair on top of the victim to defendant's DNA, which resulted in "very strong mathematical support" the pubic hair belonged to defendant. It was "approximately 890 billion times more likely" the pubic hair came from defendant than an unknown, unrelated contributor. Testing of the victim's underwear revealed four contributors, with the main contributor being the victim. The other three contributors were "very limited, very low level." A low result is commonly explained by "items that may have touched something or been in contact with something that also might have DNA on it that could possibly get transferred to an item." When compared to defendant's DNA, testing was unable to determine he was a contributor but also could not exclude him.

An additional DNA type was found on the victim's external genitals. Testing revealed DNA unrelated to the victim, indicating either an additional donor or an "artifact."[1] Defendant was excluded as a contributor. Helton opined that the additional DNA peak in the genital swabs was an artifact and not a "true DNA type." A partial DNA profile from the handle of a knife thought to be the murder weapon located in the victim's home was determined "too limited in nature" to be usable for DNA comparison purposes.

Andrea Young, an expert in the field of forensic biology and DNA, obtained a partial Y-chromosomal short tandem repeat (Y-STR DNA) haplotype from swabs taken inside the victim's rectum. Unlike autosomal DNA testing, which looks at all 24 genetic locations, Y-STR DNA testing only looks at half of an individual's chromosomes, the Y chromosome, resulting in a "haplotype." Y-STR DNA testing is performed in samples where there's an expectation of a lot of female DNA compared to male DNA. Young testified it was standard to use Y-STR DNA testing when the victim is female. Young compared the partial Y-STR haplotype from the swabs to defendant's DNA and determined it was a match. Young testified the haplotype was found in one in 1,211 Caucasian American males in the general population, and would be expected to match all other paternally related males to defendant.

Defendant was arrested and charged with first-degree murder, first-degree criminal sexual conduct, and first-degree home invasion. Defendant's first trial ended in a mistrial after the jury remained deadlocked. The prosecution moved *nolle prosequi* to dismiss the criminal sexual conduct and home invasion charges. A second trial proceeded on the first-degree murder charge.

Defendant testified he lived down the street from the victim in May 1997. Defendant asserted the victim was at his house often because she was friends with his father and his father's girlfriend. Defendant testified he once helped the victim with a stuck screen on her window. The

---

[1] According to Helton, artifacts could be "dye blobs, fluorescent spikes, different things that occur in the process of analyzing DNA" that do not mean another individual's DNA is present.

victim's friends, family, and neighbors testified they did not know defendant, and if the victim needed help with anything around the house, she would have asked them. The jury convicted defendant of first-degree murder under theories of premeditation and felony murder. Defendant now appeals.

Defendant argues the prosecution failed to present sufficient evidence proving his identity as the perpetrator in violation of his due-process rights. Defendant argues the only credible evidence presented was his palm print on the window and his Y-STR DNA haplotype on a pubic hair and the victim's rectal swabs. We disagree.

This Court "review[s] de novo a challenge to the sufficiency of the evidence." *People v Baskerville*, 333 Mich App 276, 282; 963 NW2d 620 (2020). On appeal, evidence is viewed "in a light most favorable to the prosecut[ion] to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *Id*. "The standard of review is deferential; a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*.

"A challenge to the sufficiency of evidence underpinning a conviction implicates due process*." People v Parkinson*, __ Mich App __, __; __ NW3d __ (2023) (Docket No. 362683); slip op at 4. "[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 (2018). Defendant was convicted of first-degree murder under theories of premeditation, MCL 750.316(1)(a), and felony murder, MCL 750.316(1)(b). To support a conviction of premeditated murder, the prosecution must prove: "(1) the intentional killing of a human (2) with premeditation and deliberation." *Oros*, 502 Mich at 240. To support a conviction of felony murder, the prosecution must prove:

> (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. [*People v Lane*, 308 Mich App 38, 57-58; 862 NW2d 446 (2014).]

The enumerated felony here was based on first-degree criminal sexual conduct, in violation of MCL 750.520b(1)(e) (actor is armed with a weapon).

Defendant only challenges his identity as the perpetrator of the murder. "Identity of the perpetrator is an element in every criminal case." *People v Galloway*, 335 Mich App 629, 641; 967 NW2d 908 (2020). Circumstantial evidence is sufficient to establish the identity element of an offense. See *People v Bass*, 317 Mich App 241, 264; 893 NW2d 140 (2016) ("[A]lthough the identity evidence is circumstantial . . . there was sufficient evidence for a rational fact-finder to conclude that defendant was the perpetrator.").

Defendant asserts the only credible circumstantial evidence presented by the prosecution was defendant's palm print on a window, and a Y-STR DNA haplotype consistent with defendant

-3-

on rectal swabs taken from the victim and a pubic hair found on her body. Defendant misstates or misconstrues the hair evidence. While the rectal swabs from the victim were a match to defendant's haplotype, the pubic hair found on top of the victim's body was an autosomal DNA match to defendant. Helton testified the pubic hair was "approximately 890 billion times more likely" to belong to defendant than an unknown, unrelated contributor. Helton quantified this result as "very strong mathematical support" the pubic hair belonged to defendant.

Defendant argues Y-STR DNA is not unique and defendant's haplotype is found in one out of 1,211 Caucasian males. Moreover, defendant was excluded from being the contributor to the rectal swabs under the autosomal DNA test. Defendant argues he was one of "multiple contributors" to the DNA under the victim's left fingernails and his DNA was "uninformative" when compared to four possible contributors to the victim's underwear. Defendant reiterates he was excluded as a contributor to the victim's right fingernails, genital swabs, and the knife swabs.

Defendant's arguments relate to the weight of the evidence rather than its sufficiency. "[A] jury is free to believe, or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

At trial, Young acknowledged autosomal DNA testing of the rectal swabs excluded defendant and Y-STR DNA was not unique. Young explained Y-STR DNA testing is performed in "samples where there's an expectation of a lot of female DNA compared to male DNA." Young explained it was standard to use Y-STR DNA testing when a female was the victim and, given the high ratio of female to male DNA in the rectal-swab sample, she "would not expect to see any male DNA types present in the autosomal DNA testing for that sample." Helton testified with modern advancements in DNA testing, it would not be unexpected for a "low, limited minor additional [DNA type] detected under the nails possibly just corresponding to . . . casual contact." All of defendant's arguments were presented to the jury during cross-examination and closing argument.

"A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). The jury heard multiple days of testimony. Defendant's pubic hair was found on top of the victim and his DNA was found underneath the victim's fingernails. Defendant's palm print was found on a window outside the victim's home where multiple screens had been cut. Defendant testified he previously helped the victim with her window, however, the victim's grandson, best friend, and close neighbors all testified they had never heard the victim mention defendant or his family. Testimony indicated if the victim needed help with anything around her home, she always asked a different neighbor's family. Defendant's Y-STR haplotype was found inside the victim's rectum. And while a haplotype is not unique, it was additional evidence making it more likely than not that defendant was at the scene of the murder. Furthermore, defendant testified he was in the neighborhood the night the victim was killed. When viewing all of the evidence in a light most favorable to the prosecution, the jury could have concluded beyond a

reasonable doubt defendant was the individual responsible for the victim's death. See *Baskerville*, 333 Mich App at 282.

Moreover, when viewing all of the evidence in a light most favorable to the prosecution, the jury also could have concluded beyond a reasonable doubt the victim was killed while defendant committed or attempted to commit first-degree criminal sexual conduct. See MCL 750.520b(1)(e). The victim was found with her nightgown and bathrobe pulled up, and her underwear removed and discarded on the floor beside her. As noted, defendant's pubic hair was found on top of the victim and his Y-STR haplotype was found inside the victim's rectum. Helton testified a pubic hair found on top of a victim's body "certainly would potentially represent very recent and intimate contact between a possible perpetrator and the victim." "Circumstantial evidence and any reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of a crime." See *Kenny*, 332 Mich App at 403. It is reasonable to infer from the way the victim was found, the pubic hair found on top of her, and the presence of foreign DNA in the victim's rectum that the murder involved at least an attempted sexual assault.

Defendant also asks this Court to extend the "fingerprint evidence rule" to Y-STR DNA. Defendant cites *People v Ware*, 12 Mich App 512, 515; 163 NW2d 250 (1968), where this Court held, in general, fingerprint evidence alone may only support a conviction if "the fingerprints corresponding to those of the accused [are] found in the place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed." Defendant argues DNA and fingerprints are similar because they are both unique, but DNA, unlike fingerprints, may be transferred. Defendant argues because Y-STR DNA is not unique, without more, it cannot be used as definitive evidence to sustain a conviction.

Even if this Court wanted to consider extending the fingerprint evidence rule to Y-STR DNA, this case would be inapplicable. In *Ware*, the only evidence connecting the defendant to the crime was his fingerprint. *Ware*, 12 Mich App at 514. In this case, Y-STR DNA is not the only evidence linking defendant to the victim's murder. As mentioned above, additional evidence included: (1) defendant's palm print, (2) his pubic hair on the victim, (3) his DNA under her fingernails, (4) his testimony placing himself in the area, and (5) testimony from the victim's friends, family, and neighbors asserting the victim did not know defendant.

Because there is sufficient evidence to support defendant's identification, his due-process rights were not violated. See *Oros*, 502 Mich at 240 n 3.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani

-5-