*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTONY BRAGG BLANTON,

        Defendant-Appellant.

UNPUBLISHED
January 24, 2025
10:49 AM

No. 367772
Van Buren Circuit Court
LC No. 2022-023583-FH

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

In this criminal appeal, defendant, Antony Bragg Blanton, asks us to consider whether his trial counsel deprived him of his right to the effective assistance of counsel and whether the prosecutor presented sufficient evidence to support one of Blanton's convictions. A jury convicted Blanton of one count of third-degree criminal sexual conduct (CSC-III) involving a "mentally incapable, mentally incapacitated, or physically helpless" person, MCL 750.520d(1)(c); and two counts of fourth-degree criminal sexual conduct (CSC-IV) pursuant to MCL 750.520e(1)(b). The trial court sentenced Blanton to serve 72 months to 15 years in prison for his CSC-III conviction and 57 days in jail for each of his CSC-IV convictions. We hold that Blanton has not established any error that warrants relief and, therefore, we affirm, but remand for the trial court to correct Blanton's judgment of sentence.

## I. BACKGROUND

This case arises out of an incident on September 27, 2021, when Blanton forced his neighbor to engage in fellatio. At the time of the assault, Blanton was 50 years old and the victim was 33 years old, but the victim had cerebral palsy, Joubert Syndrome, a heart tumor, and she had the intellectual capabilities of a 10 or 11-year-old child. The victim could hear and understand others who spoke to her, but she communicated through sign language. With the help of a sign language interpreter, the victim testified at trial that, while her mother was out shopping, Blanton came over to her house and took her outside to the picnic table in her yard. According to the victim, Blanton gave her beer and he also drank beer. Blanton then laid the victim down and touched her buttocks, breasts, and vagina.

-1-

The victim further testified that Blanton then gave her more beer and marijuana, he unbuttoned his pants, and placed his penis in her mouth. The victim testified that Blanton "peed" in her mouth, which caused her to throw up. According to the victim, Blanton went home and then returned a short time later while the victim was still at the picnic table. The victim recalled that Blanton again placed his penis in her mouth and "peed." The victim testified that she did not feel like she could say "no," and she could not control her body because she was high from the marijuana and inebriated from the beer. The jury convicted Blanton as stated, and he now appeals.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Blanton argues that his trial counsel denied him his right to the effective assistance of counsel because she failed to discuss a plea offer made by the prosecutor or explain the risks of taking the case to trial. We disagree.

## A. STANDARDS OF REVIEW

Generally, whether counsel provided effective assistance is a mixed question of fact and law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). However, if the trial court did not hold an evidentiary hearing on the issue, we review this issue for mistakes apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part, 493 Mich 864 (2012). We review de novo whether counsel's particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and, if so, whether it prejudiced the defendant. *Id.* at 19-20.

## B. LEGAL PRINCIPLES

The right to the effective assistance of counsel is guaranteed by the United States and Michigan Constitutions. See US Const, Am VI; Const 1963, art 1, § 20; *Lafler v Cooper*, 566 US 156, 168; 132 S Ct 1376; 182 L Ed 2d 398 (2012). To prove that counsel provided ineffective assistance, a defendant bears the burden to show (1) that defense counsel's performance was so deficient that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that defense counsel's deficient performance so prejudiced the defendant that it deprived him of a fair trial; that is, but for defense counsel's errors, the result of the proceeding would have been different. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). In proving these elements, the defendant must overcome a strong presumption that defense counsel's performance constituted sound trial strategy. *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003).

Although a defendant has no right to receive a plea offer from the prosecution, *Lafler*, 566 US at 168, defense counsel generally "has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v Frye*, 566 US 134, 145; 132 S Ct 1399; 182 L Ed 2d 379 (2012). Counsel's assistance must be sufficient to enable the defendant "to make an informed and voluntary choice between trial and a guilty plea." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). When a defendant rejects a plea offer, the defendant must show that, but for the ineffective assistance

counsel, there is a reasonable probability that the defendant would have accepted the plea, the prosecution would not have withdrawn it, the court would have accepted it, and the sentence would have been less severe under the offer than under the sentence that was imposed. *Lafler*, 566 US at 164.

## C. DISCUSSION

As noted, Blanton claims that his trial counsel failed to explain a plea offer made by the prosecutor and failed to discuss the risks of going to trial. Blanton did not request an evidentiary hearing in the trial court and, contrary to his assertion on appeal, he did not file a motion for remand in this Court to make an evidentiary record to facilitate appellate review. Therefore, our review is limited to mistakes apparent on the record. See *Heft*, 299 Mich App at 80.

Blanton admits, and the record shows, that Blanton knew about the plea offer because, at a pretrial conference, the prosecutor explained the offer and the risk of a conviction:

> *Ms. Keeley* [prosecutor]: Yes, your Honor. I did extend an offer and I did not have a response from the defense. The offer is to plead to Count I, CSC in the Third Degree. Sentencing guideline range is 36 to 60 months on the offer but 51 to 85 if convicted at trial[.] I have no objection for a Cobbs evaluation. If there was something specific that was requested I haven't received it and other than that I would just indicate that there were some bond violations that I—wasn't sure if the Court wanted to address today or not.
>
> *The Court*: Okay, thank you. So—
>
> *Ms. Hutchins* [defense counsel]: She did extend the officer [sic], your Honor.

As stated on the record, the plea offered by the prosecutor reduced the number of charges and the minimum sentencing range, which the prosecutor plainly described. But, thereafter, Blanton pleaded not guilty and he attended further hearings without raising the issue of the plea and, instead, moved forward with trial.

Thus, Blanton has failed to establish his claim of ineffective assistance of counsel. The record reflects that, at one point, the prosecutor offered Blanton a plea agreement that could have resulted in a lower sentence than Blanton received following his jury trial conviction. But the record does not disclose that Blanton's counsel provided ineffective assistance by failing to discuss the plea with him, nor that Blanton would have accepted the plea, the prosecutor would not have withdrawn the plea offer, or that the trial court would have accepted the plea agreement and that his sentence would have been less severe. *Lafler*, 566 US at 164. Absent this showing, Blanton cannot prevail on his claim that counsel denied him his right to the effective assistance of counsel. See *Douglas*, 496 Mich at 592.

## III. SUFFICIENCY OF THE EVIDENCE

Blanton further argues that the prosecutor presented insufficient evidence for the jury to convict him of CSC-III. Again, we disagree.

### A. STANDARD OF REVIEW

We review a challenge to the sufficiency of the evidence by reviewing the "evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). "But more importantly, '[t]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict.'" *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Further, the prosecutor does not have to negate every reasonable theory consistent with innocence—the prosecutor is bound only "to prove the elements of the crime beyond a reasonable doubt," and "in the face of whatever contradictory evidence the defendant may provide." *Nowack*, 462 Mich at 400 (quotation marks and citation omitted).

### B. LEGAL PRINCIPLES

To prove the charge of CSC-III in this case, the prosecutor had to present evidence that Blanton engaged in "sexual penetration" with the victim and, in relevant part, that he knew or had reason to know that "the victim [was] mentally incapable, mentally incapacitated, or physically helpless." MCL 750.520d(1)(c). Under the statute, " '[m]entally incapable' means that a person suffers from a mental disease or defect that renders that person temporarily or permanently incapable of appraising the nature of his or her conduct." MCL 750.520a(j) " 'Mentally incapacitated' means that a person is rendered temporarily incapable of appraising or controlling the person's conduct due to the influence of a narcotic, anesthetic, alcohol, or other substance, or due to any act committed upon that person without the person's consent." MCL 750.520a(k).

### C. DISCUSSION

The record reflects that the trial court accurately instructed the jury on the elements of CSC-III and the theories presented trial:

> First, that the defendant engaged in a sexual act that involved entry into [the victim]'s mouth by defendant's penis. Any entry no matter how slight is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated.
>
> Second, that [the victim] was mentally incapable or mentally incapacitated at the time of the alleged act.

-4-

> Mentally incapable means that [the victim] was suffering from a mental disease or defect that made her incapable of appraising either the physical or moral nature of the conduct.

> Mentally incapacitated means that [the victim] was unable to understand or control what she was doing because of drugs or alcohol given to her or something done to her without her consent.

> Third, that the defendant knew or should have known that [the victim] was mentally incapable or mentally incapacitated at the time of the alleged act.

The record also reflects that the prosecutor presented sufficient evidence on the elements of CSC-III for the jury to find Blanton guilty beyond a reasonable doubt. The victim described how Blanton twice penetrated her mouth with his penis, and the jury had the opportunity to see and hear the victim at trial to understand her problems with coordination and communication. The prosecutor also presented evidence about the victim's various diagnoses, including that she had the intellectual capacity of a 10 or 11-year-old child. The victim testified about the effects of the beer and marijuana Blanton provided her and that she felt unable to stop Blanton's assault. Finally, Blanton himself confirmed that he was a neighbor and friend of the victim's family for about 10 years, which supported the inference that he knew about the victim's diagnoses at the time he committed the assault. This evidence plainly satisfied the elements of CSC-III under the prosecutor's theory of the case.

Notwithstanding this evidence, Blanton argues that the jury should not have believed the victim because her "recollections were erratic." Specifically, Blanton asserts that, although the victim testified that she vomited after the assault, no one noticed vomit on her clothing or near the picnic table. Similarly, Blanton maintains that the victim's testimony changed regarding the number of times that he ejaculated in her mouth. Finally, Blanton further argues that the victim's mother lied about the nature of her relationship with Blanton.

When reviewing challenges to the sufficiency of the evidence, we must not interfere with the jury's role in deciding the weight and credibility to give to a witness's testimony. *People v Hardiman*, 466 Mich 417, 431; 646 NW2d 158 (2002). In this case, the jury heard the testimony of the victim, the victim's mother, and Blanton. Clearly, the jury found the victim and her mother to be more credible, and we will not second guess that assessment. See *id*. Viewing all the evidence in the light most favorable to the prosecution and drawing all reasonable inferences in support of the jury's verdict, we conclude that there was sufficient evidence to support Blanton's conviction. See *Oros*, 502 Mich at 239.

## IV. CORRECTION OF JUDGMENT OF SENTENCE

The judgment of sentence indicates that the jury acquitted Blanton of one count of CSC-IV. But the jury actually acquitted Blanton of one count of CSC-III. Blanton is entitled to an accurate judgment of sentence, so we remand this case for the limited purpose of correcting the judgment of sentence to change the reference in Count 2 from CSC-IV to CSC-III. See MCR 6.435(A).

Affirmed, but remanded for the ministerial task of correcting the judgment of sentence. We do not retain jurisdiction.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani