*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

FOR PUBLICATION
January 24, 2025
9:46 AM

Plaintiff-Appellee,

v

No. 365531
Calhoun Circuit Court
LC No. 2021-002883-FH

SHANNON MARIE DINGEE,

Defendant-Appellant.

Before: GADOLA, C.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial conviction of unlawfully posting a message, MCL 750.411s. The trial court sentenced defendant to serve 90 days in jail with the sentence suspended and to serve 3 years on probation. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case has its origins with two young adults—SK and the victim—who were close friends in high school and for a time after high school. Defendant is SK's mother. The victim contacted defendant after a party in May 2020 and asked defendant for help with a matter involving SK. Specifically, the victim accused SK of having engaged in sexual misconduct with her while she was at the party. Defendant subsequently defended her son and contested the victim's version of events.

In June 2020, the victim confronted SK at another party and loudly and repeatedly yelled that he had raped her. According to SK, a crowd of people chased him back to his friend's car, and his friend drove him away. Approximately two months later, a former girlfriend contacted SK and arranged to meet with him at night in a secluded park. The former girlfriend allegedly lured SK to the park so that a group could ambush him. At this arranged meeting, SK was attacked. Defendant blamed the victim for the attack on her son, even though there was no evidence that the victim planned, encouraged, or participated in it.

-1-

Defendant created a website, titled "_ _ _ _ _ _ Lies.com,"[1] through which she accused the victim of lying. On that website, defendant attacked the victim's reputation and posted images of the victim that included details that would allow others to identify the victim's social media accounts. Defendant also posted what she deemed to be evidence that the victim fabricated her claim against SK. Defendant asserted that the victim was responsible for the attack on her son and posted images of his injuries. In addition to the website, defendant posted numerous messages and comments on Facebook targeting the victim and referring people to the website she had created. She also eventually made TikTok videos about the victim.

After the victim began receiving numerous threats and comments from third parties on her social media accounts, the victim was forced to close the accounts. She testified that she also quit school and work, and she moved back home for her own safety. The Calhoun County Sheriff's Department conducted an investigation and on the basis of the evidence collected, the prosecutor charged defendant with one count of unlawfully posting a message in violation of MCL 750.411s. The jury found defendant guilty, and the trial court sentenced her as noted. This appeal followed.

## II. BUSINESS RECORDS

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Roper*, 286 Mich App 77, 90; 777 NW2d 483 (2009). A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *People v Clark*, 330 Mich App 392, 432; 948 NW2d 604 (2019). This Court reviews de novo whether the trial court properly interpreted and applied the rules of evidence. *People v McFarlane*, 325 Mich App 507, 517; 926 NW2d 339 (2018). A trial court necessarily abuses its discretion when it admits evidence that was inadmissible as a matter of law. *Roper*, 286 Mich App at 91.

## B. ANALYSIS

Defendant first argues that the trial court abused its discretion when it allowed the prosecutor to admit business records produced by Facebook. We disagree.

In the trial court, defendant repeatedly objected to introduction of statements that appeared in records supplied by Facebook for two accounts associated with defendant and one account associated with the victim. Defendant objected on the ground that the Facebook data was inadmissible hearsay because it included statements by persons who were not present and without sufficient basis to establish a foundation for the admission of the records. Defendant also argued

---

[1] The actual first name of the victim in this case is deleted, although in the website, the defendant included it.

that the Facebook data was inadmissible because the prosecutor did not strictly comply with the notice requirement under MRE 902(11).[2]

On appeal, defendant only argues that the prosecutor had to strictly comply with the notice provisions stated under MRE 902(11) before the trial court could admit the records. Because the prosecutor did not send a formal written notice, she maintains that the trial court could not admit the records under MRE 803(6). The rules of evidence allow the admission of hearsay evidence compiled through regularly conducted activity under MRE 803(6)—the business-records exception to the hearsay rule. See *People v Huyser*, 221 Mich App 293, 296-297; 561 NW2d 481 (1997).

Ordinarily, for a record to be admissible under this exception, the record must be authenticated by a custodian of the records. See *People v Fackelman*, 489 Mich 515, 536 n 15; 802 NW2d 552 (2011). Under MRE 902, "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect" to certain types of documents. In relevant part, extrinsic evidence is not required to authenticate a record admissible under MRE 803(6) if the record was accompanied by a written declaration under oath by a qualified person certifying that:

> (A) The record was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
>
> (B) The record was kept in the course of the regularly conducted business activity; and
>
> (C) It was the regular practice of the business activity to make the record.
>
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them. [MRE 902(11).]

In this case, the prosecutor obtained more than 200,000 pages of records from Facebook detailing the activities of the Facebook accounts at issue, which included records of the postings to the accounts with an identifier for the posts. The only dispute is over whether the prosecutor provided the notice required under the last paragraph of MRE 902(11).

The prosecutor listed the Facebook records as evidence that she intended to admit in her notice of the evidence, but she did not specifically state that she intended to admit the evidence

---

[2] The Supreme Court amended the Michigan Rules of Evidence on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). In this opinion, we cite the version of the rules in effect at the time of trial.

using MRE 902(11). The prosecutor stated that she had already provided the defense with all "written or recorded statements" by lay witnesses and had already provided the defense with copies of all "documents, photographs or other papers that the People may introduce." Although the prosecutor did not provide a separate, formal notice to the defense in which she related that she intended to admit the Facebook records as self-authenticating documents under MRE 902(11), she nevertheless met the minimum requirements of that rule with her disclosure because she both identified certified records and social media posts as evidence that she intended to admit, and the context provided by the preliminary examination made it amply clear that the Facebook records were the social media posts that were certified. Accordingly, the trial court did not abuse its discretion when it allowed the prosecutor to admit the Facebook records as self-authenticating records under MRE 902(11). See *Roper*, 286 Mich App at 91.

### III. FIRST AMENDMENT

#### A. STANDARDS OF REVIEW

This Court reviews de novo whether the trial court properly determined the constitutionality of a statute. *People v Hrlic*, 277 Mich App 260, 262; 744 NW2d 221 (2007). This Court also reviews de novo whether the trial court erred when it denied a motion for directed verdict, *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001), and whether the trial court properly interpreted the relevant statutory provisions. *People v Assy*, 316 Mich App 302, 307; 891 NW2d 280 (2016).

This Court also reviews de novo whether a defense counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *McFarlane*, 325 Mich App at 527. Because the trial court did not hold an evidentiary hearing concerning defendant's claim of ineffective assistance of counsel, this Court's review is limited to mistakes that are apparent on the record. See *id*.

#### B. ANALYSIS

Defendant argues on appeal that MCL 750.411s is unconstitutional on its face and as-applied, but she does not directly address the elements of the statute and does not address whether the statute is overbroad in that it might apply to constitutionally protected speech or conduct. By failing to offer any meaningful analysis for a facial challenge, defendant has abandoned that claim of error. See *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006).

Turning to defendant's as-applied challenge, under MCL 750.411s, the Legislature criminalized the posting of a message under certain conditions:

> (1) A person shall not post a message through the use of any medium of communication, including the internet or a computer, computer program, computer system, or computer network, or other electronic medium of communication, without the victim's consent, if all of the following apply:
>
> (a) The person knows or has reason to know that posting the message could cause 2 or more separate noncontinuous acts of unconsented contact with the victim.

(b) Posting the message is intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(c) Conduct arising from posting the message would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(d) Conduct arising from posting the message causes the victim to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested. [MCL 750.411s(1).]

MCL 750.411s does not prohibit a person from "posting any and all messages of every kind." *Buchanan v Crisler*, 323 Mich App 163, 178; 922 NW2d 886 (2018). Rather, the "focus of these elements is on the conduct the actor intended to cause by posting the message and the effect of that conduct." *Id*. at 179.

Restrictions premised on the content of the speech are presumptively unconstitutional; nevertheless, there are several categories of content that courts have recognized are not protected by the right to free speech: obscenity, defamation, fraud, incitement, true threats, and speech-integral-to-criminal conduct. *People v Burkman*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 164638 and 164639); slip op at 22. "[T]he speech-integral-to-criminal-conduct exception cannot be triggered just by speech itself being a violation of a law, even a law that bans conduct as well as speech. Instead, for the exception to apply, the speech must be integral to some conduct or scheme that is illegal in nature and independent of the speech that might be used to facilitate or accomplish the conduct or scheme." *Burkman*, ___ Mich at ___; slip op at 28. The speech-integral-to-criminal-conduct exception generally applies to stalking and cyberstalking statutes, and, on that basis, this Court has rejected First Amendment challenges to those statutes, stating that "posting a message in violation of MCL 750.411s would not constitute protected speech because the message is integral to the harassment of the victim insofar as it leads to, and is intended to cause, unconsented contacts that terrorize, frighten, intimidate, threaten, harass, or molest the victim." See *Buchanan*, 323 Mich App at 185-186.

Although the speech-integral-to-criminal-conduct exception may properly apply to the messages prohibited under MCL 750.411s, this Court has nevertheless limited the application of that exception, which must be examined on a case-by-case basis. See *Buchanan*, 323 Mich App at 188. The exception does not apply if the person posted his or her message about a public figure and on a matter of public concern, because the First Amendment affords the highest protection for speech about public figures on matters of public concern. See *Buchanan*, 323 Mich App at 189-191.

The trial court correctly determined that defendant's posts about the victim, which she posted on Facebook and her website, did not involve protected speech. Although there was evidence that defendant was angry about the handling of her son's assault case by the prosecutor and the police department, she did not create the website about the prosecutor or the police department—she created a website about the victim. The images and commentary posted on that website demonstrate that the purpose of the website was to demean and disparage the victim. There was nothing on the website that suggested that the goal of the website was to discuss, or

bring to light, deficiencies in the police department or with the prosecutor's office, which only tangentially involved the victim. To the extent that defendant mentioned the prosecutor and police departments, she did so in the context of attempting to solicit aid in holding the victim to account for a purportedly false accusation against SK.

Defendant suggests that merely mentioning the prosecutor's office, the police department, or other persons who allegedly participated in the attack on her son in some social media posts was sufficient to invoke the protections of the First Amendment for all her comments and posts. We disagree. The context amply demonstrated that defendant focused her comments and posts on the victim as a private person over a private dispute, and any mention of public issues, public figures, or public entities within the posts directed at the victim was—at best—a "thinly veiled attempt to immunize a private harassment campaign as a matter of public concern." See *id*. at 190-191. Accordingly, the trial court did not err when it denied defendant's motion for a directed verdict on the ground that the prosecutor only adduced evidence of posts that were protected under the First Amendment. See *Aldrich*, 246 Mich App at 122.

For similar reasons, defendant's claim that defense counsel's handling of the First Amendment issue amounted to ineffective assistance of counsel also fails. In order to establish her claim of ineffective assistance of counsel, defendant had to show that defense counsel's handling of the First Amendment issue fell below an objective standard of reasonableness under prevailing professional norms and that, but for the unprofessional error, there is a reasonable probability that the outcome would have been different. See *McFarlane*, 325 Mich App at 527.

In this case, defense counsel raised an as-applied challenge to the charge at issue. Specifically, he argued that the evidence showed that defendant's comments were protected speech. Because the prosecutor did not present evidence of posts that were unprotected, he maintained that the trial court had to direct a verdict in defendant's favor. Defense counsel clearly made a reasonable—if unavailing—argument that the First Amendment barred the charge at issue on the facts before the court. For that reason, defense counsel cannot be said to have completely failed to raise the issue. See *id*. Defendant also argues that defense counsel should have raised the First Amendment defense in a motion before trial, because the trial court could not properly consider the matter on a motion for a directed verdict and, for that reason, she would likely have prevailed in a motion before trial. Because a motion for a directed verdict involves review of the evidence presented by the prosecutor to determine whether the evidence was sufficient to allow a rational trier of fact to conclude that the essential elements were proved beyond a reasonable doubt, see *Aldrich*, 246 Mich App at 122, defendant would have been entitled to a directed verdict if the prosecutor's evidence only consisted of posts that amounted to protected speech. That defense counsel chose to assert the First Amendment defense through a motion for directed verdict did not fall below an objective standard of reasonableness under prevailing professional norms because it gave the trial court the opportunity to review the First Amendment issue in light of the evidence presented at trial. See *McFarlane*, 325 Mich App at 527. There is no reason for us to conclude that the trial court considered the motion for directed verdict less carefully than it would have a pretrial motion based on the First Amendment alone.

## IV. INSTRUCTIONAL ERROR

### A. STANDARD OF REVIEW

This Court reviews de novo claims of instructional error. *Martin*, 271 Mich App at 337. This Court reviews the instructions as a whole to determine whether the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried. *Id*. at 337-338. This Court reviews a trial court's decision whether an instruction applies to the facts of a case for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008).

### B. ANALYSIS

Defendant argues that the trial court erred when it failed to instruct the jury on the First Amendment. We disagree.

Defendant had the right to have a properly instructed jury consider the evidence against her. See *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022). The trial court also had the obligation to give any instruction on any theory or defense supported by the evidence. See *id*. at 35. Defendant contends that the trial court should have instructed the jury consistent with MCL 750.411s(6), which states that the statute "does not prohibit constitutionally protected speech or activity." The statute does not, however, define what constitutes protected speech or activity in the context of posting a message in contravention of MCL 750.411(s)(1). As noted, this Court has discussed the application of the speech-integral-to-criminal-conduct exception to the First Amendment and how it applies to MCL 750.411s. More specifically, under MCL 750.411s(6), MCL 750.411s(1) cannot be used to criminalize a message that targets a public figure or addresses a matter of public concern. See *Buchanan*, 323 Mich App at 196. While it may be proper to instruct a jury on the limits imposed by the First Amendment when there is a danger that the jury might improperly rely on posts directed at a public figure or that amounted to comment on a matter of public concern to convict the defendant, see, e.g., *People v Johnson*, 340 Mich App 531, 546-547; 986 NW2d 672 (2022), this is not such a case.

The victim was plainly not a public figure for purposes of the First Amendment and the evidence showed that defendant's comments were all about the victim or directed at the victim as a private person. See *Buchanan*, 323 Mich App at 189-190. To the extent that defendant made any comments about public figures—such as police officers or the prosecutor—the comments were tangential to her campaign to dehumanize and bully the victim, and the posts that defendant made about the victim did not relate to any "matter of political, social, or other concern to the community" and were not "a subject of legitimate news interest." *Id*. at 190 (quotation marks and citation omitted). Rather, defendant's posts were directed at the victim as a private person and as part of a private vendetta that defendant brought into public for personal reasons. Consequently, the trial court did not err when it determined that defendant was not entitled to an instruction

concerning commentary on public figures or matters of public concern because the facts did not support such an instruction. See *Ogilvie*, 341 Mich App at 35.[3]

## V. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

This Court reviews a challenge to the sufficiency of the evidence de novo to determine whether a rational trier of fact could have found that the prosecution proved the essential elements of the crime beyond a reasonable doubt. See *McFarlane*, 325 Mich App at 513. This Court reviews the evidence in the light most favorable to the prosecution. *Id*. This standard is highly deferential; the reviewing court must draw all reasonable inferences and make all credibility choices in support of the jury's verdict. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018).

### B. ANALYSIS

Defendant argues that the prosecutor presented insufficient evidence to support her conviction. We disagree.

Under MCL 750.411s(1), the Legislature criminalized the posting of a message "through the use of any medium of communication," if the prosecutor proves beyond a reasonable doubt that the message meets four criteria. First, the prosecutor must prove that the person sending the message knew, or had reason to know, that posting the message "*could* cause 2 or more separate noncontinuous acts of unconsented contact with the victim." MCL 750.411s(1)(a) (emphasis added). The prosecutor also had to prove that the person posting the message "intended to cause conduct that would make the victim feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411s(1)(b). Next, the prosecutor had to prove that conduct "arising from posting the message would cause a reasonable person to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411s(1)(c). Finally, the prosecutor had to prove that the conduct arising from posting the message actually caused the "victim to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested." MCL 750.411s(1)(d).

The evidence showed that defendant began her campaign by creating a website, through which she accused the victim of lying, and used her Facebook platform to direct followers and viewers to that website. On the website, defendant informed the viewer that she created the website because the victim refused to tell the truth about her " 'rape,' about pretty much everything." Although defendant claimed that the website was not limited to discussing the victim, she made it clear that she was "done with pretty little liars making false allegations and ruining lives for sport."

---

[3] Defendant also complains that the trial court erroneously instructed the jury that the prosecutor had to prove beyond a reasonable doubt that the "crime*s* occurred," even though the prosecutor only charged her with a single crime. However, when the issue was brought to the court's attention, the court agreed to strike the extra "s." Thus, by requesting a specific form of relief and obtaining it, defense counsel waived any claim that the trial court should have done more to correct the typographical error. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

In the body of the website, defendant asserted that the victim's claims against SK were provably false, and she further claimed that the victim set in motion the vicious attack on SK that nearly caused his death. The content on the website demonstrates that defendant was focused on the victim and that her goal was to destroy the victim's credibility and to convince visitors to the site that the victim was responsible for the attack on SK.

A jury considering the evidence at trial could readily infer that defendant's goal was to get others to act to accost or harm the victim. Specifically, she wanted the victim's life to change "in a way that the darkness becomes scary in a very real way." Defendant makes much of the post in which she purportedly disclaimed the notion that she wanted to harm the victim; however, to the extent that defendant encouraged her followers not to threaten the victim, she nevertheless made it clear that she had no sympathy for anyone harmed by her posts.

Defendant also asserts that the prosecutor failed to present evidence that the unconsented, noncontinuous contacts that the victim actually suffered arose from defendant's posts. She suggests that others may have contacted the victim as a result of the victim's own posts and not because of anything that defendant did. Defendant's assertions ignore the evidence that third parties directed comments and harassment toward the victim and did so in ways that permitted an inference that defendant's posts motivated them to do so.

In order to prove the charge at issue, the prosecutor had to prove that "[c]onduct arising from posting the message" both would cause a reasonable person "to suffer emotional distress and to feel terrorized, frightened, intimidated, threatened, harassed, or molested" and did in fact cause the victim to feel those things. MCL 750.411s(1)(c) and (d). Viewing the evidence in the light most favorable to the prosecutor, there was substantial evidence to support the causal relationship. See *McFarlane*, 325 Mich App at 513. The victim read several messages that she received into the record at trial. One was from a student at a different high school, who confronted the victim in a post about "ruin[ing] that kid's life." Another messenger told the victim: " 'You're what's wrong with society. They should have thrown you into the river and let you drown, whore.' " Examining these messages in the light most favorable to the prosecutor, a reasonable juror could infer from it that the sender had visited defendant's website and adopted her view that the victim was primarily responsible for what happened to SK.

There was no evidence that the victim suffered repeated unconsented contacts as a result of her initial allegation against SK before defendant created her website and began her campaign to discredit and dehumanize the victim. Considered with the evidence that there was a flood of such contacts after defendant's posts and that some of the contacts specifically adopted facts promoted by defendant, a reasonable jury could infer the requisite causal connection. Thus, there was sufficient evidence to convict defendant under MCL 750.411s.[4]

---

[4] Defendant also argues that even if no one error warrants relief, the cumulative effect of the errors at trial warrants relief. This Court reviews a cumulative error argument by examining the actual errors identified on appeal to determine whether the errors cumulatively deprived defendant of a fair trial. See *People v LeBlanc*, 465 Mich 575, 591 n 12; 640 NW2d 246 (2002). Because defendant has not identified any actual errors on appeal, there is no prejudice to accumulate.

## VI. SENTENCING

### A. STANDARDS OF REVIEW

"This Court reviews for clear error a trial court's findings in support of [a] particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *McFarlane*, 325 Mich App at 531-532. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Brooks*, 304 Mich App 318, 319-320; 848 NW2d 161 (2014) (quotation marks and citation omitted).

### B. ANALYSIS

Lastly, defendant argues that she is entitled to resentencing on the ground that the trial court erred when it assigned points to offense variables ("OV") 12 and 19. We disagree.

Although the sentencing guidelines are advisory, trial courts must still properly score the guidelines and must consider them when sentencing a defendant. *People v Lockridge*, 498 Mich 358, 391, 392 n 28; 870 NW2d 502 (2015). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). Further, the trial court may properly rely on inferences that arise from the record evidence when making the findings underlying its scoring of the OVs. *Id.* at 109.

In relevant part, the trial court was to assess 10 points under OV 19 if it found that defendant "otherwise interfered with or attempted to interfere with the administration of justice, or directly or indirectly violated a personal protection order." MCL 777.49(c). A person interferes with the administration of justice if he or she does anything to "hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013).

The evidence presented at trial permitted an inference that defendant waged her social media campaign against the victim to undermine the victim's credibility and prevent anyone from acting on the victim's allegations. Defendant specifically stated that she wanted the victim to tell police officers that she lied when she claimed that SK sexually assaulted her. On appeal, defendant makes much of the fact that the victim actually filed a report against SK and the prosecutor declined to bring charges. She claims that was proof that the victim was not deterred by defendant's posts. Defendant also cites the victim's testimony that she did not originally intend to bring her claims to the police department.

OV 19 does not require actual interference—the trial court must assign 10 points under that variable if the offender "interfered with or *attempted* to interfere with the administration of justice." MCL 777.49(c) (emphasis added). There was ample record evidence to support that the purpose of defendant's social media posts was to intimidate the victim and deter her from pursuing her claim that SK assaulted her. Consequently, the trial court did not clearly err when it found that defendant attempted to interfere with the administration of justice. See *Brooks*, 304 Mich App at 319-320.

Defendant also argues that the trial court erred when it assigned five points under OV 12, but we do not need to address this claim of error. The Legislature classified the offense of unlawful posting of a message as a Class G felony. See MCL 777.16t. The trial court calculated defendant's prior record variables at zero and her total OV score at 25, which placed her in the A(III) grid. See MCL 777.68. Even if the trial court clearly erred when it found that defendant committed two contemporaneous felonious criminal acts involving other crimes, that error would only reduce her OV total to 20 points, which would not change the applicable sentencing grid. See MCL 777.68. Accordingly, any error in the scoring of OV 12 was harmless, and defendant has not shown that she was entitled to be resentenced. See *People v Dixon*, 509 Mich 170, 177; 983 NW2d 385 (2022).

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ James Robert Redford