*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 18, 2025
10:12 AM

Plaintiff-Appellee,

v

No. 368895
Wayne Circuit Court
LC No. 21-003345-01-FC

STANLEY JOHN GARNER,

Defendant-Appellant.

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

Defendant, Stanley John Garner, appeals as of right his jury trial convictions for first-degree murder, MCL 750.316, second-degree murder, MCL 750.317, assault with intent to commit murder (AWIM), MCL 750.83, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and four related counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Garner, as a second-offense habitual offender, MCL 769.10, to life imprisonment without parole for the first-degree murder conviction, 60 to 100 years' imprisonment for the second-degree murder conviction, 25 to 50 years' imprisonment for the AWIM conviction, three to five years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for each felony-firearm conviction. On appeal, Garner argues that there was insufficient evidence to support his convictions for two reasons: (1) because the prosecution failed to prove that he did not act in self-defense, and (2) because the prosecution failed to establish premeditation. We disagree in both respects and affirm.

## I. BACKGROUND

This case started with Garner shooting and killing Aye Darius James and Kavontay Banks and shooting and injuring Mardell Sneed on April 7, 2021, in Detroit, Michigan. The day of the shooting, James, Banks, and Sneed gathered at a friend's house on Ward Street. Around 1:00 a.m., Garner came to the house and started an altercation with James. The two men knew each other and were in a fistfight two months earlier. Garner and James began to argue, and Garner backed away toward the exit. James then aggressively approached Garner. Just as James was about to grab Garner's shirt collar, Garner pulled a gun out of his pocket and began shooting. He shot

-1-

James once in the head and three times in the back, shot Banks multiple times in the back, and shot Sneed in the arm. Garner fled the scene and tried to dispose of the firearm in the trash. Police eventually arrested him at a gas station.

At trial, the prosecution offered eye-witness testimony, forensic evidence, surveillance footage, and Garner's interrogation to establish his guilt. This included the testimony of Sneed, who survived the shooting. Sneed testified that he, James, Banks, and another man were gathered at a house. James and Banks carried guns. James's gun was on the dining room table, at which the two sat. Sneed also testified that there was an AR-15 rifle in the corner of the dining room, nearest to Banks. According to James, Banks let Garner in around 1:00 a.m. Sneed testified that Garner kept his hands in the pocket of his hooded sweatshirt when he came into the dining room.

Sneed stated that Garner started an "altercation" with James, then backed away from the table into a corner toward the exit. James rose from the table, confronted Garner, and asked where the gun was. James's own gun was still on the table when he approached Garner, and according to Sneed, James did not appear to have anything in his hands. Sneed testified that nobody was standing between Garner and the exit. He testified that as soon as James tried to grab Garner's collar, Garner pulled a gun from the pocket of his sweatshirt and shot him. Sneed recognized the gun as a .40 caliber Smith & Wesson pistol.

Garner shot James in the head. After James fell, Garner shot him three more times. Banks started to run from Garner as Garner shot him. Sneed described Banks as running "for his life" toward where Sneed was sitting, knocking Sneed down. Banks did not have a gun in his hand and was not attempting to shoot at Garner. Garner shot Banks in the neck, then tried to shoot Sneed in the head. Sneed, however, was shot through his arm, which he had raised above his head. According to Sneed, Garner stood over his body for two minutes, believing him to be dead before hearing someone stir and running out of the house. Sneed then tried to hide. When he came out, he saw James and Banks on the floor. Banks was already dead. James was still breathing. He died after Sneed left to drive himself to the hospital.

The prosecution also offered testimony of Tremecia Houze, James's girlfriend, who described the events immediately before and after the shooting. Her testimony largely corroborated that of Garner, except for the details of the shooting, which happened after she left the residence briefly to go to a gas station. She confirmed that there were guns present at the residence. And she described an earlier fight between James and Garner but opined that they had no lingering animosity. The shooting occurred while she was at the store. When she returned, she called 911. She did not see Sneed but she observed Banks, who was unresponsive, lying on his back. James was lying on his back in the front room. When Houze asked James what happened, he responded that Garner shot him.

The prosecution also called law-enforcement witnesses who testified about the investigation and recovery of physical evidence. Two responding officers located Garner near the scene of the shooting and arrested him. After canvassing the area, they located a gun in a garbage can, a Smith & Wesson pistol. Another officer testified about the scene of the shooting, where he collected nine fired shell casings. All of the casings were .40 caliber rounds, which did not match any of the guns found at the scene of the shooting.

The prosecution also offered video camera footage from the gas station where police arrested Garner. The video showed Garner throwing a handgun into the trash less than an hour after the shooting. There was also fingerprint evidence regarding a latent palmprint on the magazine of the gun, which the prosecution's expert witness concluded matched Garner's left palm.

At trial, the prosecution presented a recording of Garner's interrogation following his arrest. Notably, Garner told the police he had not been to the Ward Street address in six months. During the interrogation, he also said that nobody pointed a gun at him, and he denied taking the gun to the gas station and disposing of it in the garbage can.

The defense's theory was self-defense. Garner testified on his own behalf. He testified that he routinely visited the Ward Street residence to smoke marijuana and drink. On April 7, 2021, he claimed that he went to the house to buy marijuana. When he entered, there were two guns on the table and one in Banks's hand. He claimed that James got up, grabbed a gun, and approached him threateningly. He testified that Banks pushed him toward James, who pistol-whipped him. As James continued to strike him, Garner claimed he grabbed for Banks's gun, wrestled it from Banks, and pulled the trigger.

Garner acknowledged the inconsistencies with his prior statements to the police. Notably, his testimony contradicted his statement that he had not been to the Ward Street residence in six months. He acknowledged that he "lied to the police the entire time" and "just denied everything happened[.]"

At trial, Garner's counsel moved for a directed verdict on the murder charges, which the trial court denied. The jury found Garner guilty of first-degree murder as to Banks, second-degree murder as to James, AWIM as to Sneed, one count of felon-in possession, and four counts of felony-firearm. Garner now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, Garner argues that there was insufficient evidence to sustain his convictions in two respects. He first argues that there was insufficient evidence to support his convictions for first-degree murder, second-degree murder, and AWIM because the prosecution failed to disprove his self-defense claim. As it relates to his first-degree murder conviction, he also argues that there was insufficient evidence of premeditation. We disagree in both regards.

We review de novo insufficient-evidence claims. *People v Lowrey*, 342 Mich App 99, 122; 993 NW2d 62 (2022). When assessing the claim, we review the evidence in the light most favorable to the prosecution. *Id.* This Court must "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* (quotation marks and citation omitted). In making this determination, "this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Id.* Due to the difficulty of proving a defendant's knowledge or intent, "minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be

inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

## A. SELF-DEFENSE

Garner argues that there was insufficient evidence that he did not act in self-defense. Drawing the appropriate inferences, we disagree. At common law, self-defense "justifies otherwise punishable criminal conduct . . . if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (quotation marks omitted). Generally, the individual claiming self-defense cannot be the aggressor in the encounter. *Id.* See also *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). There is no common-law duty to retreat when an individual is "subjected to a sudden, fierce, and violent attack[.]" *People v Conyer*, 281 Mich App 526, 530 n 2; 762 NW2d 198 (2008).

The Legislature also codified self-defense. See MCL 780.971. See also MCL 780.972. In relevant part, MCL 780.972 provides:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . .

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972(1)(a).]

In other words, self-defense—or the lawful use of deadly force—is justified if three conditions are satisfied. See *id.* See also M Crim JI 7.15. First, the defendant honestly and reasonably believed they were in danger of being killed or seriously injured. See *People v Goree*, 296 Mich App 293, 297; 819 NW2d 82 (2012). Second, the defendant must have actually been afraid of death or serious injury, as opposed to a minor injury. See *id.* Third, and finally, the defendant must have honestly and reasonably believed that the use of deadly force was immediately necessary. See *id.*

This typically applies in the context of murder or manslaughter, but self-defense can also apply to other crimes, like assault. *Dupree*, 486 Mich at 707. "Once a defendant injects the issue of self-defense into the trial and satisfies the initial burden of producing some supporting evidence, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 9.

-4-

Here, Garner challenges his convictions for first-degree murder against Banks, second-degree murder against James, and AWIM against Sneed. Each of these charges have various elements.[1] But Garner's sufficiency-of-the-evidence claim relates to self-defense.

Garner appears to argue that the prosecution was required to disprove every element comprising a self-defense claim. To the extent that this is his argument, it is a misstatement of the prosecution's burden. See *id*. The prosecution must prove "beyond a reasonable doubt that the defendant did not act in self-defense." See *id.* Because self-defense requires a showing that the defendant honestly and reasonably believed deadly force was necessary to prevent imminent death or bodily harm, the prosecution could successfully rebut the defendant's self-defense claim by disproving any one of the required elements beyond a reasonable doubt. See MCL 780.972(1)(a).

Garner relies on several facts in support of his self-defense argument. First, he highlights the fact that he walked into a room of armed men. James backed him into a corner and got in his face. Further, James and Banks, both of whom were armed, attacked him. Because of the attack, Garner believed deadly force was necessary to prevent further harm to himself.

The jury considered conflicting testimony regarding the events leading up to the shooting. Based on Sneed's testimony, James and Banks were armed, and at least two guns were visible—James's handgun, and the AR-15. Sneed also indicated that James "walked up in [Garner's] face," and attempted to grab Garner by the shirt collar. Thus, Garner's argument that he walked into a room of armed men and that James approached him aggressively appears to be supported by the evidence.[2]

When we consider the facts in the light most favorable to the prosecution, Garner's argument fails. See *Lowrey*, 342 Mich App at 122. There was ample testimony contradicting Garner's version of the events. Sneed testified that Garner started the fight. Therefore, even if he did walk into a room of armed men, he nonetheless instigated the fight, foreclosing a claim of self-defense. Sneed also testified that neither James nor Banks had weapons in their hands, and Banks

---

[1] "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *Smith*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted). "The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Gash*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365693); slip op at 3 (quotation marks and citation omitted). Finally, the elements of AWIM are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Haynie*, 327 Mich App 555, 561; 934 NW2d 71 (2019) (quotation marks and citation omitted), rev'd on other grounds 505 Mich 1096 (2020). See also *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010).

[2] Garner also argues that James wanted to get revenge due to a prior disagreement with him, which involved Garner stabbing his mother's boyfriend. While the record does support a prior fight between Garner and James, the trial court struck the testimony regarding the stabbing from the record as hearsay, and Garner does not contest the admissibility of the statement on appeal. Further, there was testimony that there was not lingering animosity from the prior fight.

was not standing between Garner and the exit. The jury could reasonably decide that his testimony was credible. Further, as soon as James reached up to grab Garner, Garner pulled a gun from his pocket and began shooting. By Sneed's account, Garner was the aggressor and attacked the victims. As stated, the jury considered the conflicting testimony. And the jury rejected Garner's self-defense argument. Its rejection is necessarily rooted in a credibility assessment. And "this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *Bennett*, 290 Mich App at 472.

Separate from the evidence that Garner instigated the fight leading to the shooting, there was sufficient circumstantial evidence supporting the conclusion that Garner did not reasonably believe that deadly force was immediately necessary. This evidence disproves Garner's self-defense claim and establishes his murder and AWIM convictions. The jury heard evidence that, in response to James grabbing him by the shirt collar, Garner pulled the gun from his pocket, shot James in the head, and continued to shoot him after he fell. Not only does this response demonstrate excessive force, but it shows that Garner could not have honestly and reasonably believed that deadly force was necessary. See MCL 780.972(1)(a). Garner eventually admitted that he shot James in the back three times, which was supported by medical examiner testimony. Sneed testified that Banks was running "for his life" away from Garner during the shooting, and Garner also testified that Banks was running away. Garner admitted to shooting Banks in the back multiple times, which again was supported by medical examiner testimony. Sneed also testified that after he fell out of his chair, Garner attempted to shoot him in the head. This evidence—if believed—dispels the notion that Garner had an honest and reasonable belief that he needed to prevent his imminent death or great bodily harm, since he was shooting at a man that was running away, and a man that had fallen to the ground.

Further, there was evidence indicating that Garner was the only individual shooting, which when viewed in the light most favorable to the prosecution suggests that the use of force was not immediately necessary and not in response to actual threats of serious injury. Though Garner testified that Banks was shooting at him, all of the bullet casings at the scene were from the .40 caliber handgun that Garner used during the shooting. This was the same firearm he later dumped in the garbage. Garner even acknowledged that all of the casings found at the scene belonged to the gun he shot, which he emptied of bullets.

This dovetails into the most damning issue for Garner's claim: his credibility. Garner's own conflicting statements call his credibility into question. During his testimony, he agreed that he "lied to the police the entire time" following the shooting. The jury viewed his recorded interrogation where he denied being at the residence and denied shooting. The prosecution also presented evidence of Garner's flight and disposal of the firearm. When viewed in the light most favorable to the prosecution, a reasonable jury could conclude that Garner's version of events at the time of trial was wholly unbelievable.

This evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Garner (1) was the aggressor, (2) did not honestly and reasonably believe deadly force was immediately necessary, and (3) was not under threat of serious bodily injury. Accordingly, the prosecution presented sufficient evidence to disprove Garner's self-defense claim beyond a reasonable doubt, and the jury properly convicted him of first-degree murder, second-degree murder, and AWIM.

## B. PREMEDITATION

Next, Garner argues that there was insufficient evidence to support his first-degree murder conviction as to Banks because the prosecution failed to prove that the killing was premeditated. Again, we disagree.

Again, first-degree premeditated murder requires proof that (1) the defendant intentionally killed the victim and (2) that the act of killing was premeditated and deliberate. *Smith*, ___ Mich App at ___; slip op at 10 (quotation marks and citation omitted). Regarding the second element, "[p]remeditation is not statutorily defined and cannot be evaluated in a rigid and mechanical manner." *People v Walker*, 330 Mich App 378, 383; 948 NW2d 122 (2019) (quotation marks and citation omitted). "A murder is committed deliberately if it is done without adequate provocation or while undisturbed by 'hot blood.' " *Smith*, ___ Mich App at ___; slip op at 10, quoting *People v Clark*, 330 Mich App 392, 436; 948 NW2d 604 (2019). Premeditation and deliberation require "sufficient time to allow the defendant to take a second look." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "That is, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *People v Oros*, 502 Mich 229, 242; 917 NW2d 559 (2018) (quotation marks and citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, it is often said that premeditation and deliberation require only a brief moment of thought or a matter of seconds[.]" *Id*. at 242-243 (quotation marks, brackets, and citations omitted).

A jury may infer the defendant's state of mind "from [the] defendant's conduct judged in light of the circumstances." *Id*. at 243 (citation omitted). See also *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001) ("The elements of premeditation and deliberation may be inferred from circumstances surrounding the killing.") (Quotation marks omitted). The prosecution can establish premeditation through evidence of "(1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008) (providing a nonexhaustive list of factors). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind[.]" *Kanaan*, 278 Mich App at 622. "[W]hat constitutes sufficient evidence to support the elements of premeditation and deliberation may vary from case to case because the factual circumstances will vary, but the ultimate answer may be resolved in determining whether reasonable inferences may be made to support the fact-finder's verdict." *Oros*, 502 Mich at 243-244.

Garner does not seem to dispute that he shot and killed Banks. Instead, he argues (in addition to his self-defense argument) that there is insufficient evidence of premeditation to support his first-degree murder conviction. He argues there was no time for him to deliberate on his actions when he was attacked by two men with guns without means of escape, requiring him to shoot for his life after wrestling a gun from Banks.

But like Garner's self-defense claim, this requires us to accept a view of the facts most favorable to Garner, not the prosecution. There was conflicting evidence regarding the circumstances of Banks's shooting. Garner stated he did not go to the Ward Street address armed

or with the intention to shoot anyone.  Rather, he wrestled a gun from Banks during the altercation, as Banks stood behind him, blocking the door.  Garner testified that the events leading up to the shooting happened "so fast," that he began to shoot without aiming.

However, viewing the facts in the light most favorable to the prosecution, there is sufficient evidence contradicting Garner's testimony and preferred narrative.  See *Lowrey*, 342 Mich App at 122.  There is evidence that Garner started the altercation, and pulled the gun from his sweatshirt pocket.  Banks was not blocking the exit, nor did he have a gun.  Garner shot Banks in the back three times as he was running away from Garner.  Even assuming that Garner initially began shooting in reaction to James, who "walked up in [Garner's] face," and attempted to grab him by the shirt collar, viewing the evidence in the light most favorable to the prosecution, Garner eliminated the immediate threat when James fell to the ground.  Rather than retreat, he continued to shoot at Banks, who was fleeing with his back turned.  To the extent that Garner presented contradictory testimony, again, "this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *Bennett*, 290 Mich App at 472.

Viewed in the light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Garner's murder of Banks was premeditated.  Accordingly, the jury properly convicted him of first-degree murder.

## III.  CONCLUSION

For the reasons previously stated, we affirm.

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young